**Verletta Maie PLILER et al., Plaintiffs,**

**v.**

**ASIATIC PETROLEUM COMPANY (TEXAS), LTD., et al., Defendants.**

**Civ. A. No. 12041.**

United States District Court
S. D. Texas,
Houston Division.

July 14, 1961.

Hill, Brown, Kronzer & Abraham, W. James Kronzer, Houston, Tex., for plaintiffs.

Baker, Botts, Andrews & Shepherd, William C. Harvin, Houston, Tex., for defendant Compania Shell de Venezuela.

INGRAHAM, District Judge.

This is an action in tort in which plaintiffs seek an "in personam" judgment for damages for the death of two men in an oil field accident in Venezuela,

South America. The action was originally filed in the District Court of Harris County, Texas, against five different defendants. Three defendants, Asiatic Petroleum Company (Texas) Ltd. (hereinafter "Asiatic of Texas"), Shell Oil Company and Shell Development Company, were subject to service in Texas and were served. The other two defendants, Shell Caribbean Petroleum Corporation and Compania Shell de Venezuela (hereinafter "CSV"), were not present in Texas, were not served, and did not appear. Shell Oil Company and Shell Development Company removed the action in its entirety to this court pursuant to 28 U.S.C.A. § 1441 et seq.

Following removal, the three defendants who had appeared, Shell Oil Company, Shell Development Company and Asiatic of Texas, were dismissed by order of this court on April 13, 1960. While plaintiffs have not entered an order of dismissal as to Shell Caribbean Petroleum Corporation, they now state that relief is sought only against CSV (letter of Mr. Kronzer of May 16, 1961, page 1). As to CSV, plaintiffs now move for default judgment (pursuant to Fed. Rule Civ.Proc. 55, 28 U.S.C.A.), or alternatively for issuance of new process (pursuant to Art. 2031b, Vernon's Texas Civil Statutes) [1], or remand (pursuant to 28 U.S.C.A. § 1447(c) ).[2] Appearing specially to contest jurisdiction, CSV moves to dismiss this cause for lack of personal jurisdiction (pursuant to Fed. Rule Civ.Proc. 12(b) ).

■ These facts appear established by the pleadings, affidavits and depositions. Plaintiffs' decedents, Messrs. Pliler and Frayard, were working in South America as employees of a drilling contractor, C. A. Anaco Well Service (hereafter "Anaco"), a Venezuelan corporation, at the time of the fatal accident. Anaco has no corporate connection with CSV. CSV, a Canadian corporation, is an oil producing company operating solely in Venezuela; it has neither office nor assets in Texas (see depositions of Messrs. Whilden and Wirtensohn and

1. Art. 2031, Vernon's Texas Civil Statutes:
"In any suit against a foreign corporation, joint stock company or association, or acting corporation or association, pending or hereafter filed in this State, to which any foreign corporation is a party or is to be made a party, process may be served on the President, Vice-President, Secretary, Treasurer, General Manager, or upon any local or travelling agent or travelling salesman of such corporation, joint stock company or association, or acting corporation or association in this State."

Art. 2031b, Vernon's Texas Civil Statutes:
"Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, associa-

tion, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceeding arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.
"Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

2. 28 U.S.C.A. § 1447(c):
"(c) If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case."

various affidavits supporting CSV's motion). Anaco had contracted to drill a well for CSV and was so engaged when decedents were injured. Anaco appears to have been an independent contractor by virtue of its contract with CSV. Plaintiffs' decedents had no contractual relations with CSV.

After the accident, CSV undertook to assist Anaco in returning the men to their Texas homes. CSV engaged Asiatic Petroleum Corporation, a Delaware corporation with its principal office in New York (hereafter "Asiatic of Delaware"), to take appropriate action to make these men comfortable upon their arrival in this country. Asiatic of Delaware then engaged Asiatic of Texas to perform these services in its behalf. This was done by one Wirtensohn, employee of Asiatic of Texas, at the request of and supervision of Asiatic of Texas. CSV did not direct the manner in which this assistance was rendered.

CSV's additional links with Texas may be summarized as follows. At intervals CSV has needed additional employees in its oil operations in Venezuela. Some employees are drawn occasionally from American applicants. Under an operating arrangement with CSV, Asiatic of Delaware is paid a fee for securing applicants, investigating, interviewing and screening them and filing a report with CSV in Venezuela; CSV then accepts or rejects the applicants on the basis of the information thus supplied. CSV exercises no control over the manner of performance by Asiatic of Delaware. When the need arises to interview or screen Texas applicants, Asiatic of Delaware utilizes an operating agreement with Asiatic of Texas, a Texas corporation which maintains an office in Houston, Texas. Under this arrangement, for an agreed fee, Asiatic of Texas has on occasion located applicants, investigated, interviewed and screened them and filed a report thereon with Asiatic of Delaware. In doing so, Asiatic of Texas has had no direct contact with CSV.

Asiatic of Texas is a wholly owned subsidiary of Asiatic of Delaware. Asiatic of Texas has its own offices and operations separate from its parent. Neither CSV nor Asiatic of Delaware has any control over the means of performance of Asiatic of Texas. Asiatic of Texas has performed its services only for companies in the Royal Dutch Shell family. Asiatic of Texas performed these additional services for Asiatic of Delaware: (1) arranged physical examinations for prospective employees; (2) arranged transportation for such prospects; (3) kept abreast of technical developments in the industry; and (4) determined the value of certain new equipment in the oil field. The cause of action in tort alleged against CSV does not arise out of these activities or services performed by Asiatic of Texas for Asiatic of Delaware within Texas. CSV has no office in Texas. CSV has no agents or employees working within Texas.

The motions now before the court present these questions: (1) is CSV "doing business" in Texas within the meaning of Art. 2031b, Vernon's Texas Civil Statutes; (2) may Texas constitutionally subject CSV to "in personam" jurisdiction; and (3) if it appears Texas is without personal jurisdiction over CSV, ought the federal court to remand or dismiss.

I now summarize the arguments of the parties. Plaintiffs contend this court has personal jurisdiction over CSV for these reasons: (1) Asiatic of Texas, being wholly owned by Asiatic of Delaware, was an "acting corporation" or agent of CSV in Texas; (2) the providing of such services as screening personnel, checking equipment, etc., by Asiatic of Texas for Asiatic of Delaware (which had contracted with CSV to perform same) constituted "doing business" in Texas on the part of CSV; (3) sufficient jurisdictional contacts are found in the activity of CSV in arranging for decedents' return to Texas after the accident; and (4) process served on Wirtensohn at the Houston office of Asiatic of Texas would

almost assuredly reach CSV via Asiatic of Delaware. CSV argues as follows: (1) its sole contact with Texas is that some employees have been selected from applicants who were Texas residents; (2) this one contact does not constitute "doing business" in the Texas statutory sense; (3) CSV's activities in Texas are insufficient to meet due process standards of "minimum contacts"; and (4) since the court lacks personal jurisdiction, the case must be dismissed rather than remanded to state court.

For reasons hereinafter stated, I find CSV is not "doing business" in Texas within the meaning of Art. 2031b, Vernon's Texas Civil Statutes, and applicable Texas case law. Therefore, the court need not express an opinion as to the constitutionality of Art. 2031b, which was enacted in 1959. Plaintiffs seem to argue Art. 2031b merely clarified or refined Texas law on the point. Perhaps this statute was intended by the Texas Legislature to expand prior concepts of "doing business" in Texas. Irrespective of whether Art. 2031b simply restated Texas law or moved to the very limits of "minimum contacts" permitted by the Fourteenth Amendment, CSV's tenuous links to Texas are insufficient to give this court personal jurisdiction.

Assuming with plaintiffs that Art. 2031b effected no expansion of Texas law, relevant case law clearly says no personal jurisdiction here. Two cases from this district are in point. Nielsen v. Arabian American Oil Co., C.A.5909, S. D.Tex.1952, 5 Cir., 1953, 206 F.2d 391, was a suit by a Texas resident for breach of employment contract against a defendant who was engaged in oil production in Saudi Arabia. Defendant maintained an employment office in Houston wherein interviews were conducted. This office was staffed by defendant's own employees. Service upon the Secretary of State of Texas was quashed by Judge Connally. Such activities were not "doing business". In two respects Nielsen was a much stronger case for plaintiff than the one at bar: (1) the cause of action in Nielsen arose out of the very

acts of "doing business" relied upon by plaintiff, i. e., employment contracts, while here a tort in Venezuela has no connection with alleged solicitation of employees by CSV in Texas; and (2) in Nielsen defendant maintained an office in Texas staffed by its own employees, while CSV obtained Texas recruits via Asiatic of Texas via Asiatic of Delaware, both being separate entities not controlled by CSV. Despite these links to Texas, defendant in Nielsen was dismissed.

L. P. Cowart v. Columbian Petroleum Co., C.A.11,420 (S.D.Tex.1958), raised anew the question of the extent to which a foreign corporation may be subjected to personal jurisdiction in Texas because of employment contracts solicited here. In Cowart, defendant, a foreign corporation, was engaged in oil and gas production in Columbia, South America. Defendant had neither agents, assets nor business in Texas. It had an operating arrangement with Magnolia whereby Magnolia's Houston employees interviewed and processed prospective employees for overseas employment with defendant. One employee hired through Magnolia was injured as a result of defendant's alleged negligence in an oil field accident in South America. Employee brought suit in this district, alleging defendant was "doing business" in Texas. Judge Connally quashed the summons and dismissed for lack of personal jurisdiction. This case seems to be an even stronger one for denying jurisdiction than Cowart. While defendant dealt directly with Magnolia in Texas, CSV has no direct relationship with Asiatic of Texas. Plaintiff in Cowart had been hired as a result of the alleged acts of doing business, i. e., contracts of employment initiated and processed in Texas by Magnolia. In the present case not only were plaintiffs' decedents not hired through any arrangements with Asiatic of Texas, decedents were not even employees of CSV. Finally, Roper v. Compania De Perforaciones Y Servicio, S.A., Tex.Civ.App.1958, 315 S.W.2d 30, involved solicitation of employees in Texas

in a manner analogous to that at bar. Again, lack of personal jurisdiction was noted.[3]

Plaintiffs fare no better if Art. 2031b is said to have expanded Texas' concept of "doing business" to the limits allowed by the Supreme Court in such cases as International Shoe Co. v. State of Washington, 1955, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and Hanson v. Denckla, 1958, 357 U.S. 235,[4] 78 S.Ct. 1228, 2 L.Ed.2d 1283. The sum of those cases is that due process still places territorial restrictions upon assertion of jurisdiction by state courts. There yet must be "substantial connection" between defendant and forum.[5] This court said in 185 F.Supp. 48 at page 56:

"Determination of such a 'substantial connection' requires evaluation of the facts in each situation. The factors to be studied may include (1) the nature and character of the business, (2) the number and type of activities within the forum, (3) whether such activities give rise to the cause of action, (4) whether the forum has some special interest in granting relief, and (5) the relative conveniences of the parties." (Numbers supplied.)

Employing these five factors as a formula for analysis, CSV's lack of "substantial connection" with Texas is readily apparent:

(1) "the nature and character of the business": CSV, a Canadian corporation, engages in oil and gas production solely in Venezuela. CSV does not explore, drill, buy, or sell in Texas.

(2) "the number and type of activities within the forum": Since an agency relationship requires supervision and control, Roper v. Compania De Perforaciones Y Servicio, S.A., supra, CSV has conducted no activities in Texas. CSV has no control over services performed for it by Asiatic of Delaware, nor over services performed by Asiatic of Texas for Asiatic of Delaware. Thus, neither of those corporations is an agent of CSV. CSV's sole contact with Texas is the fact that some of its employees have been selected from Texas applicants.

(3) "whether such activities give rise to the cause of action": Plaintiffs' decedents were employees of Anaco Well Service, not CSV. Cause of action has no connection with sole "activity" of CSV that has

---

3. Plaintiffs rely chiefly upon Gray Co. v. Ward, Tex.Civ.App.1940, 145 S.W.2d 650, and a federal case which followed Gray, Acme Engineers v. Foster Engineering Co., 5 Cir., 1958, 254 F.2d 259. Both cases are inapposite for two reasons: (1) defendants in each case had maintained through Texas agents a continuous solicitation of sales in Texas; and (2) actions arose out of those very solicitation acts constituting the business done in Texas. Here, CSV maintained no such long-time solicitation in Texas, and the tortious conduct complained of did not arise out of CSV's Texas contacts.

4. For a canvassing of Supreme Court authorities in this area see my opinion in Lone Star Motor Import, Inc. v. Citroen Cars Corp., D.C.Tex.1960, 185 F.Supp. 48, reversed on other grounds, 5 Cir., 1961, 288 F.2d 69.

5. Mr. Chief Justice Warren stated in Hanson v. Denckla, supra, 357 U.S. at page 251, 78 S.Ct. at page 1238:
"* * * The requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. State of Washington * * * But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

connection with Texas, i.e., employment contracts with Texas residents.

(4) "whether the forum has some special interest in granting relief": Apart from the natural interest a state might have in granting relief to its citizens, Texas has no "special" interest in this cause of action, such as California had in affording relief to its citizens against foreign insurers in McGee, supra. Texas has no "special" interest in granting relief to its citizens against a foreign corporation on a cause of action that arose under the laws of a foreign government for conduct outside the United States.

(5) "the relative conveniences of the parties": It would be a hardship for plaintiffs to sue CSV in Venezuela or Canada. However, it is inconvenient for CSV to defend in Texas where it has no office, agent, or contact. The logical place to try the suit is Venezuela. Venezuelan courts could compel attendance of witnesses not obtainable via Texas process. Venezuelan law will govern the parties' rights. Neither court nor bar here are experts in such law.

I conclude the court is without personal jurisdiction over CSV under any view of Art. 2031b. Again, no opinion is expressed on the constitutionality of Art. 2031b.

█ There remains for decision only: whether a remand or dismissal is proper under 28 U.S.C.A. § 1447(c) when after a proper removal the district court concludes it lacks "in personam" jurisdiction over defendant. CSV argues that Sec. 1447(c) covers only "federal jurisdiction" inquiries, i. e., whether this is a "removable" case and does not apply when lack of jurisdiction in the federal court is based upon lack of jurisdiction in state court. I agree. When, after removal, it is found that the state court lacks either subject matter or personal jurisdiction, the proper procedure is to dismiss the case for lack of jurisdiction rather than remand. Digby v. United States Fidelity & Guaranty Co., 5 Cir., 1957, 239 F.2d 569; Block v. Block, 7 Cir., 1952, 196 F.2d 930; Caraway v. Ford Motor Co., D.C.W.D.Mo.1956, 144 F.Supp. 295.[6] The following quotations state the proper rule:

Wilson v. Kansas City Southern Ry. Co., D.C.W.D.Mo.1961, 101 F.Supp. 56, 60:

> "When after removal it appears that service of process may not be perfected so as to complete the jurisdiction of the removal court, the only recourse of the removal court is to dismiss the action."

Radford v. Minnesota Mining & Mfg. Co., D.C.E.D.Tenn.1955, 128 F.Supp. 775, 776:

> "If the defendant was not subject to process issued by the State Court, and not subject to service of alias process issued by this Court, plaintiff's action must be dismissed."

The same rule is stated in 3 West's Federal Practice Manual § 3215 (1960) (see page 95).

6. Plaintiffs rely solely upon Weeks v. Fidelity and Casualty Co. of N. Y., 5 Cir., 1955, 218 F.2d 503, to sustain their contention that 28 U.S.C.A. § 1447(c) requires remand here. The following language in 218 F.2d at page 504 supports plaintiffs:

"Where the lack of jurisdiction in the federal court is based on lack of jurisdiction in the state court, the action should be remanded rather than dismissed. Under the former removal statute, which contained provisions authorizing dismissal or remand, a dismissal was usual. However, the present statute contains provision only for remand to the state court, and we think that a remand is the proper procedure."

The quoted passage would control disposition here had it been necessary for decision in Weeks. The real basis for remand in Weeks rested upon the fact that the case was improperly removed. In light of the district court's duty to remand because of faulty removal, the question of whether the state court had jurisdiction (and the operation of Sec. 1447(c)) ought never have been reached. Therefore, the language relied upon by plaintiffs was essentially dictum. This dictum yields to the Fifth Circuit's later decision in Digby, supra.

CSV's motion to dismiss for lack of jurisdiction will be granted. Plaintiffs' motion for default judgment, issuance of new process, or remand will be denied. The clerk will notify counsel to draft and submit appropriate order.