Joe W. DOTSON

v.

FLUOR CORPORATION et al.

Civ. A. No. SA79CA56.

United States District Court,
W. D. Texas,
San Antonio Division.

June 13, 1980.

Michael Kendrick, Jr., Corpus Christi, Tex., Gary D. Howard, San Antonio, Tex., for plaintiff.

Frank S. Manitzas, San Antonio, Tex., for defendants.

## ORDER

SPEARS, District Judge.

Plaintiff filed this suit against Fluor Corporation and one of its subsidiaries, Fluor Constructors, Inc., alleging that his contract of employment to work in Saudi Arabia was breached when he was terminated without cause. Plaintiff also alleged that Fluor Constructors made misrepresentations to him regarding certain terms of employment when he was offered the job. Jurisdiction is based on diversity of citizenship.

With leave of Court, plaintiff amended his complaint to name another Fluor subsidiary, Fluor Arabia, Ltd., as an additional defendant. In accordance with Art. 2031b, Tex.Rev.Civ.Stat.Ann. (the Texas "long arm" statute), the Secretary of State forwarded copies of the amended complaint to Fluor Arabia "in care of its intermediary and affiliated corporation, Fluor Constructors, or upon its parent corporation, Fluor Corporation." The Texas Secretary of State has certified that the copies of the complaint were forwarded as requested.

Fluor Arabia has filed a motion to dismiss for lack of *in personam* jurisdiction, contending that it is a foreign business entity incorporated in and under the laws of Saudi Arabia whose principal place of business is in Dhahran, Saudi Arabia. Fluor Arabia asserts that it is not a wholly owned subsidiary of Fluor Corporation or Fluor Constructors.

The plaintiff contends that Fluor Arabia, acting either directly or through an intermediary, Fluor Constructors, (which is authorized to do business in Texas and has an appointed agent here) recruited Texas residents for employment in Saudi Arabia. Plaintiff asserts that this action constitutes "doing business" in Texas under Art. 2031b(4), as amended August 27, 1979, and that Fluor Arabia has sufficient "minimum

contacts" itself or through its affiliated corporations to satisfy the requirements of due process. In diversity cases, the federal court's power to exercise jurisdiction over the persons of non-resident defendants turns on two independent considerations: the law of the state in which the federal court sits must confer jurisdiction over the person of the defendant, and if it does, the exercise of jurisdiction under state law must comport with basic due process requirements of the United States Constitution. *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir. 1973).

Prior to the 1979 amendment, Art. 2031b(4) contained the following definition of "doing business:"

> For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

In 1979, the Texas legislature further broadened the definition of "doing business" by adding the following sentence:

> The act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas shall be deemed doing business in the State.

This cause of action was commenced on February 7, 1979, and Fluor Arabia was added as a party defendant by amendment of plaintiff's complaint on November 5, 1979. Plaintiff was offered the job in October or November, 1977, and his employment was terminated by the company in March, 1978.

The defendant argues that the 1979 amendment to Art. 2031b(4) cannot be held to have a retroactive effect, because such a construction would violate Article 1, Section 16 of the Texas Constitution, which provides:

No bill or attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

The only authority offered by the parties on this issue deals with the question whether Art. 2031b as originally enacted in 1959 was to be applied retroactively. In *Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, 185 F.Supp. 48 (S.D.Tex.1960), *rev'd on other grounds*, 288 F.2d 69 (5th Cir. 1961), Judge Ingraham held that Art. 2031b was to be retroactively applied under the facts of that case, stating:

> It is well settled that remedial and procedural statutes of Texas are not subject to the constitutional prohibition against retroactive laws and apply both to pending and future actions, unless otherwise provided. From the date such statutes become operative, all proceedings must be had under the new law (citations omitted).
>
> It is settled law that a litigant has no vested right in a remedy, and that remedial statutes are valid and control the litigation from the date they become a law, and all proceedings taken thereafter must be taken under the new law (citations omitted).
>
> Where vested rights would not be impaired, uniform application of remedies and procedure from their effective date is essential to an orderly judicial system. 185 F.Supp. at 51, 52.

In *Rozell v. Kaye*, 197 F.Supp. 733 (S.D. Tex.1961), Judge Garza came to the opposite conclusion, holding that Art. 2031b did not apply to a cause of action arising prior to its enactment and effective date. In a second opinion, Judge Garza reconsidered his decision, and again held that retroactive application of Art. 2031b would violate the Texas Constitution. Judge Garza did not view the Fifth Circuit's opinion in Lone Star as affirming Judge Ingraham on that issue.

In *Muchard v. Berenson*, 307 F.2d 368 (5th Cir. 1962), *cert. denied*, 371 U.S. 962, 83 S.Ct. 541, 9 L.Ed.2d 509 (1963), the Court settled the controversy, holding:

> The contract of employment forming the basis of the action was alleged to have been made in 1953 and modified in 1954. Three of the individual defendants . . . were served with process by service on the Secretary of State of Texas pursuant to Art. 2031b Vernon's Ann. Texas Civil Statutes which became effective on August 10, 1959. Judge Ingraham in *Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, S.D.Tex., 1960, 185 F.Supp. 48, 51, held that Article 2031b was remedial and should be given a retroactive effect. That part of Judge Ingraham's decision was upheld by this Court on appeal. *Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, 5 Cir., 1961, 288 F.2d 69, 72. Judge Garza has, however, had strong convictions that Article 2031b does not apply retroactively to a claim arising prior to the enactment and effective date of the statute. *Rozell v. Kaye*, S.D.Texas, 1961, 197 F.Supp. 733; second opinion 1962, 201 F.Supp. 377.
>
> .    .    .    .    .
>
> *In the absence of some authoritative decision of the Supreme Court of Texas on the question, we adhere to the ruling in Lone Star Motor Import, Inc. v. Citroen Cars Corp., supra, and hold that the substitute service on the three defendants was authorized.* 307 F.2d at 370 (emphasis added).

After having considered these cases and others, the Court is of the opinion that the 1979 amendment to Art. 2031b should be applied to this case. Such a construction does not violate the Texas Constitution because the amendment is remedial and procedural, and does not affect any vested rights of the defendant. In *Pratt v. Story*, 530 S.W.2d 325 (Tex.Civ.App.— Amarillo 1975, no writ), the Court stated:

> At the outset, it should be noted that not all statutes fall within the prohibition of Art. 1, Section 16. It has long been held in Texas that statutes which are remedial in nature and which do not disturb vested rights are not within this constitutional ban (citations omitted).
>
> A remedial statute has been defined as a law introducing a new regulation for the

advancement of the public welfare or conducive to the public good (citations omitted); or one which supplies defects, and abridges superfluities in the former law (citations omitted); or one enacted to afford a remedy, or to improve and facilitate remedies existing for the enforcement of rights and the redress of injuries and also one intended for the correction of defects, mistakes and omissions in the civil institutions and administrative policy of the state (citations omitted). Generally stated, a remedial statute pertains to remedies or procedure. 530 S.W.2d at 328.

In *McCain v. Yost*, 155 Tex. 174, 284 S.W.2d 898, 900 (1955), the Court stated that "[a] statute cannot be said to be a retroactive law prohibited by the Constitution unless it can be shown that the application of the law would take away or impair vested rights acquired under existing law."

The defendant herein argues that retroactive application of the 1979 amendment would affect "vested rights" obtained under the old law. It appears to the Court that this argument is unsound. As the Fifth Circuit stated in connection with the Illinois "long arm" statute,

the service of process statute did not add to or create new liabilties which were then sought to be retrospectively asserted. What the process law does is merely provide for the effectual assertion of that right, a means of doing so through local courts. As a remedial, procedural statute, it could constitutionally apply to supply effective machinery for the assertion of existing substantive rights . . . . *Bluff Creek Oil Co. v. Green*, 257 F.2d 83, 85–86 (5th Cir. 1958).

In *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court, in construing a California process statute, stated:

The statute was remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations under the contract. It did nothing more than to provide peti-

tioner with a California forum to enforce whatever substantive rights she might have against respondent. At the same time respondent was given a reasonable time to appear and defend on the merits after being notified of the suit. Under such circumstances it had no vested right not to be sued in California (citations omitted). 355 U.S. at 224, 78 S.Ct. at 201–02, 2 L.Ed.2d at 226–27.

Similarly, defendant Fluor Arabia had no vested right not to be sued in Texas before the 1979 amendment to Art. 2031b.

Now that it is established that Texas law confers jurisdiction over the person of the defendant, it must be determined whether the exercise of personal jurisdiction would comport with basic due process requirements of the U. S. Constitution.

The facts pertinent to this issue are as follows: Fluor Arabia is a subsidiary of Fluor Corporation, although perhaps it is not wholly owned. The deposition of David Fletcher, an employee of Fluor Constructors, reflects that he was responsible for recruiting and hiring employees for Fluor Arabia "exclusively." In addition, Mr. Fletcher identified the advertisement in a San Antonio newspaper to which plaintiff responded, and stated that it was a typical newspaper advertisement that was used by Fluor Constructors when it was recruiting employees in Texas for assignment with Fluor Arabia. Mr. Fletcher stated that all of plaintiff's pay came from Fluor Arabia and not from Fluor Constructors.

Further questioning in the deposition revealed the following:

Q. And you had offered approximately 200 other people jobs to go to Saudi Arabia in the course of your employment with Fluor Constructors, Inc., is that right?

A. Roughly, yes.

Q. Now, were you acting in any way for Fluor Arabia, Limited on that day?

A. Yes, I was.

Q. In what way?

A. Hiring personnel for their job site.

Q. In reality, Fluor Constructors, Inc. was acting for Fluor Arabia Limited in Texas hiring people to be sent to Saudi Arabia; is that correct?

A. That is correct.

Q. And some of that hiring you did in Texas?

A. That's correct.

Defendant argues that plaintiff was employed by Fluor Constructors to work for Fluor Constructors and then at some later time he was *loaned* to Fluor Arabia.

While the party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists, *Jetco Electronic Industries, Inc. v. Gardiner, supra,* the plaintiff is required only to make a prima facie showing of the facts on which jurisdiction is predicated. *Bland v. Kentucky Fried Chicken Corp.,* 338 F.Supp. 871 (S.D.Tex.1971).

In *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir. 1980), the Court reviewed the Supreme Court decisions concerning *in personam* jurisdiction as follows:

The guiding principle of due process in the exercise of personal jurisdiction was announced by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which allows states to exercise jurisdiction over non-residents who have such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), amplified this standard. *Hanson* states that due process requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240. The trend of recent years has unquestionably been to expand the powers of the states to impose jurisdiction over defendants.

. . . . .

Despite this trend, though, the courts must be careful not to render decisions resulting in the "eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson,* 357 U.S. at 251, 78 S.Ct. at 1238.

In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court stated that the question is whether

the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. . . . When a corporation "purposefully avails itself of the privilege of conducting activities within the forum state," . . . it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation . . . . 100 S.Ct. at 567.

After reviewing the answers given by David Fletcher, a Fluor Corporation employee, the Court is of the opinion that the exercise of personal jurisdiction over Fluor Arabia would not "offend traditional notions of fair play and substantial justice." It is apparent that Fluor Arabia has purposefully availed itself of the privilege of employing Texas residents; that it has invoked the benefits and protections of Texas law; and that it should have reasonably anticipated being haled into court here. The cause of action herein asserted arises directly out of the business done by Fluor Arabia in Texas. It should also be recognized that at this juncture the Court is not being called upon to hold a subsidiary corporation liable for the acts of another subsidiary corporation. As one Court has held, "the legal test of liability is different from and [is] more stringent than a legal test relating to the amenability of process and forum." *Reul v. Sahara Hotel,* 372 F.Supp. 995, 997 (S.D.Tex.1974).

By the admission of defendant's agent, Fluor Constructors was acting as an agent for Fluor Arabia in interviewing and hiring Texas residents. As one author has noted, "[t]here remains no substantial doubt that a corporation may be doing business in

a state even though not physically present there, and it is not a violation of due process in a proper case to subject a foreign corporation to jurisdiction of the court by reason of the acts of a subsidiary or agent." 2 Moore's Federal Practice ¶ 4.25(6). In *Sparrow v. Goodman*, 376 F.Supp. 1268, 1271 (W.D.N.C.), *aff'd sub nom., Rowley v. McMillan*, 502 F.2d 1326 (4th Cir. 1974), the Court held that a principal may be subjected to "long arm" jurisdiction on account of the acts of his agent within the scope of his authority. As the Court of Appeals for the Fifth Circuit has noted, Art. 2031b represents "an effort by Texas to exploit to the fullest the expanding limits of *in personam* jurisdiction." *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1234 (5th Cir. 1973).

Defendant's reliance upon *Nielsen v. Arabian American Oil Co.*, 206 F.2d 391 (5th Cir. 1953); *Pliler v. Asiatic Petroleum Company (Texas), Ltd.*, 197 F.Supp. 212 (S.D. Tex.1961); and *Roper v. Compania De Perforaciones Y Servicio, S. A.*, 315 S.W.2d 30 (Tex.Civ.App.—Austin 1958, writ ref'd n. r. e.), for the proposition that "the mere act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside Texas" does not constitute doing business in Texas, is misplaced. Those cases arose prior to the recent amendment to Art. 2031b, and two of them arose prior to the original enactment of Art. 2031b. In addition, the contacts in Texas by the defendants in *Pliler* and *Roper* were much more tenuous than the ones by Fluor Arabia in the case at bar. Moreover, it is clear that each case must be decided on its own facts, and the Court must examine the quantity as well as the quality of the acts by the defendant within the forum state.

It is, therefore,

ORDERED:

(1) Defendant Fluor Arabia's motion to dismiss for lack of *in personam* jurisdiction is OVERRULED.

(2) Pursuant to Rule 12(a), Fed.R.Civ.P., Fluor Arabia is directed to answer plaintiff's amended complaint within ten (10) days after notice of the Court's action.