Ernest W. RUNNELS,
Plaintiff-Appellant,

v.

TMSI CONTRACTORS, INC. and TMSI
Arabia, Ltd., Defendants-Appellees.

No. 85–4016

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 1, 1985.

Brame, Bergstedt & Brame, David B. McCain, Lake Charles, La., for plaintiff-appellant.

Camp, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, David R. Frohn, Lake Charles, La., for defendants-appellees.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Ernest Runnels appeals from the dismissal of his Louisiana diversity action for lack of personal jurisdiction. Runnels brought an action for wrongful termination of his contract for employment in Saudi Arabia against TMSI Arabia, Ltd. (TMSI Arabia). On TMSI Arabia's motion, the district court dismissed for lack of personal jurisdiction. Concluding that TMSI Arabia had sufficient minimum contacts with Louisiana and that maintenance of this action in Louisiana would not offend traditional notions of fair play and substantial justice, we reverse and remand.

## I. *Facts*

As the consequence of a referral from a former colleague and acquaintance, Runnels received a telephone call in Louisiana in April 1982 from Richard McKim, an agent of TMSI Arabia,[1] soliciting him for

---

1. McKim was then employed by Technical Management Services, Inc., Glendale, California (TMSI), an affiliate of TMSI Arabia. A third entity, TMSI Contractors, Inc., a California corporation and a division of TMSI, was named as a defendant. The district court, prior to its dismissal of TMSI Arabia, also dismissed TMSI Contractors, Inc., for lack of personal jurisdiction; as to TMSI Contractors, Inc., Runnels states in his brief before this Court that he no longer pursues an appeal. Thus, this appeal is being carried against only TMSI Arabia.

TMSI Arabia is a limited partnership domiciled in Saudi Arabia whose principal and only

employment in Saudi Arabia. Subsequent to their conversation, McKim sent by express mail to Runnels at his home in Louisiana a sample employment agreement and other documents to facilitate travel abroad. Runnels then submitted a resume to McKim which was forwarded to TMSI Arabia for approval.

On or about April 17, TMSI Arabia transmitted a telex message to McKim in California confirming that an approval had been issued for the employment of Runnels. Between then and April 22 McKim sent to Runnels in Louisiana a TMSI Arabia employment contract for signature. Runnels signed the contract, retained a copy and returned the original to McKim in Los Angeles, which original was then forwarded to Saudi Arabia for signature. McKim and his secretary then coordinated the necessary out-processing services for Runnels such as a medical examination, a work visa and travel arrangements.

The contract provided for employment as a senior electrical technician for a period of one year from April 22, 1982, to April 23, 1983. Runnels worked in Saudi Arabia for TMSI Arabia and its client, the Arabian American Oil Company (ARAMCO), pursuant to the employment contract through and beyond April 23, 1983, because his employer requested that the term be extended. After working a brief extension period, he was advised by representatives of TMSI Arabia that his employer was interested in obtaining his services for another year of employment. Agents for TMSI Arabia gave Runnels money to purchase a round trip ticket to the United States; he was also instructed to return to Saudi Arabia on May 28, 1983, to begin his next term of employment. Runnels did return to Saudi Arabia where, on May 28, he renewed his employment contract with TMSI Arabia for an additional year.

In June 1983 Runnels' employment was terminated as a result of ARAMCO's request that he be removed "due to security breach." Shortly thereafter, Runnels received a letter from TMSI Arabia stating that his employment had been terminated because he violated a provision of his employment contract. Runnels then brought this suit in response to his termination under the renewed employment contract signed in Saudi Arabia. From the district court's grant of TMSI Arabia's motion to dismiss for lack of jurisdiction, this appeal followed.

## II. *Jurisdiction*

Runnels contends that the district court had jurisdiction over TMSI Arabia by virtue of the Louisiana "long-arm" statute, La.Rev.Stat.Ann. 13:3201 (West Supp. 1985).[2] In a diversity action, such as this, "a federal court has jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state." *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149 (5th Cir. 1984); *see Quasha v. Shale Development Corp.*, 667 F.2d 483, 485–86 (5th Cir.1982). It is now settled that the Louisiana long-arm statute permits the exercise of in personam jurisdiction over a nonresident defendant to the full limits of due process under the fourteenth amendment in cases where the suit arises from the contacts of the nonresident with the state of Louisiana.

place of business is Al Khobar and Dhahran, Saudi Arabia. It was not qualified to do business in Louisiana nor had it appointed an agent for service of process in Louisiana. Nevertheless, over the past five years, TMSI Arabia has hired 793 United States citizens for work in Saudi Arabia; over the same period of time, it has hired 6 Louisiana residents. In order to solicit Louisiana residents for employment overseas, it has placed advertisements in newspapers of specialized circulation within the state of Louisiana such as the New Orleans Times Picayune and the Baton Rouge Advocate.

**2.** The statute provides in part:

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state. While Runnels does not so indicate, we assume that he bases jurisdiction upon TMSI Arabia's activities soliciting him for employment in Saudi Arabia. These activities allegedly constitute the "transacting of business in Louisiana" as required by paragraph (1).

*Growden,* 733 F.2d at 1150; *Austin v. North American Forest Products,* 656 F.2d 1076, 1089 (5th Cir.1981). It follows, then, that "[b]usiness activity which will satisfy the requirements of due process will thus necessarily satisfy the 'transacting business' requirement of the [Louisiana] Longarm Statute." *Austin,* 656 F.2d at 1089. Consequently, it is necessary to consider only whether the exercise of jurisdiction over TMSI Arabia, the nonresident defendant, conforms with the requirements of due process.

III. *Due Process Requirements*

In *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081 (5th Cir.1984), we restated the due process requirements for the exercise of personal jurisdiction:

> For due process requirements to be met in a court's assertion of personal jurisdiction, the nonresident defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *DeMelo v. Toche Marine, Inc.,* 711 F.2d at 1270. To make this determination, the court must first consider whether the defendant purposefully availed itself of the benefits and protection of the forum state's laws; and second, whether the state has any special interest in providing a forum for the suit, taking into consideration the relative conveniences and inconveniences of the parties. *Austin v. North American Forest Products,* 656 F.2d at 1089; *Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d at 641–43.

744 F.2d at 1083.

A. The District Court Decision

In determining that TMSI Arabia lacked sufficient contacts with Louisiana, the district court failed to undertake the two-prong inquiry stated above to determine whether defendant's due process rights would be violated by the exercise of personal jurisdiction. Rather, the court first determined that the facts of the instant action are very similar to the facts of both *Thibodeaux v. King-Wilkinson, Inc.,* 386 So.2d 189 (La.App. 3d Cir.) (contacts insufficient to support jurisdiction over the foreign employer), *writ refused,* 392 So.2d 668 (La.1980), and *Babineaux v. Southeastern Drilling Corp.,* 170 So.2d 518 (La.App. 3d Cir.) (en banc) (contacts sufficient to support jurisdiction over the foreign employers), *writs refused,* 247 La. 613, 172 So.2d 700 (La.1965), *appeal dismissed for want of a substantial federal question,* 382 U.S. 16, 86 S.Ct. 67, 15 L.Ed.2d 12 (1965). It then concluded that this action more closely resembles *Thibodeaux* than *Babineaux* and dismissed the action against TMSI Arabia for want of jurisdiction.

*Thibodeaux* and *Babineaux* are indeed closely analogous to this action. In *Thibodeaux,* a Louisiana resident sued a Texas corporation for back wages allegedly due under an employment contract between the parties for work in Scotland. As in this action, the defendant was not qualified to do business in Louisiana nor had it appointed an agent there for service of process. After plaintiff's friend, who worked for the defendant in Scotland, suggested employment with defendant, plaintiff received a telephone call in Louisiana from the Houston office of defendant also suggesting employment. A contract of employment was then signed in Texas. No contacts, other than the initial call to plaintiff suggesting employment, occurred in Louisiana. On the basis of these minimal contacts, the Louisiana Third Circuit determined that the contract was not a Louisiana contract and that defendant's contacts with Louisiana were insufficient to be considered transacting business in Louisiana. 386 So.2d at 191.

In *Babineaux,* a Louisiana resident sued two Panamanian corporations for injuries he sustained while he was engaged in oil field work in Kuwait. Again, none of the defendants had qualified to do business in Louisiana nor had they appointed an agent

there for service of process. Unlike *Thibodeaux*, but just as in this action, the defendants in *Babineaux* advertised in a local Louisiana newspaper to solicit workers for offshore drilling work in the Persian Gulf. Plaintiff responded to this advertisement and obtained an interview with defendants initially in Louisiana and then in Texas. Plaintiff then executed an employment contract in Louisiana and forwarded it to Dallas, Texas, where it was later signed by an officer of the defendants and returned to plaintiff. The Louisiana court noted in addition to the above facts that several other employees were engaged for overseas operations as a result of the defendants' advertisements and interviews in Louisiana. The Louisiana Third Circuit, *en banc*, then concluded that due process would support jurisdiction over defendants as a result of their contacts with Louisiana. *Babineaux*, 170 So.2d at 527.

In concluding that this action falls on the "*Thibodeaux* side of the line," the district court stated:

> In *Babineaux* the plaintiff responded to an ad in a Lafayette newspaper and was interviewed along with other applicants by an agent of the employer at a motel in Lafayette. Here, the plaintiff was the only person contacted and he was reached by an agent from California by telephone. Moreover, the employment contract terminated in this case was a one-year renewal contract executed in Saudi Arabia after the plaintiff had worked for TMSI for a year.

We are not convinced that these facts render *Thibodeaux* more analogous to this action.

Unlike the defendant in *Thibodeaux*, TMSI Arabia actively solicited Louisiana residents for employment opportunities overseas through advertisements placed in two Louisiana newspapers over a five year period. The district court's reliance on the fact that Runnels was the only person contacted does not significantly distinguish *Babineaux*. As we have noted, "the number of contacts with the forum state is not determinative of the 'minimum contacts'

test; rather, 'the contacts must support an inference that the nonresident defendant purposefully availed himself of the benefits of the forum state....'" *Bean Dredging Corp.*, 744 F.2d at 1083 (quoting *Quasha v. Shale Development Corp.*, 667 F.2d 483, 488 (5th Cir.1982)).

In addition, the district court placed great weight upon the fact that the contract sued upon was the renewal contract executed in Saudi Arabia rather than the initial contract received and signed by Runnels in Louisiana. Our review of the record indicates that notwithstanding the fact that Runnels' suit alleged wrongful termination of the second contract executed in Saudi Arabia, the execution of that contract is directly linked to the activities of TMSI Arabia that led to Runnels' initial employment. The renewal contract did not result from independent, arms-length negotiations. Rather, it was anticipated by language in the initial contract, facilitated by TMSI Arabia's purchase of a round trip ticket for Runnels to the United States and back and signed pursuant to an understanding between Runnels and TMSI Arabia reached prior to his departure to the United States. All of these facts, established by Runnels' uncontroverted affidavit, indicate that the renewal contract arose from TMSI Arabia's solicitation efforts in Louisiana to the same extent that the first contract resulted from TMSI Arabia's activities.

We conclude, therefore, that the facts of this action do not fall, as the district court determined, on the *Thibodeaux* side of the line; nor do we conclude that *Babineaux* controls our decision. Rather we recognize that "[w]hether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case." *Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co.*, 283 So.2d 687 (La.1973). Accordingly, we undertake the due process inquiry by examining first whether TMSI Arabia has minimum contacts with Louisiana and second whether Louisiana is a fair forum for this action.

### B. Minimum Contacts with Louisiana

In determining whether TMSI Arabia has certain minimum contacts with Louisiana, the "operative consideration is that the defendant's contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir.1974). TMSI Arabia engaged in the solicitation of Louisiana residents for overseas employment. Pursuant to this enterprise, TMSI Arabia not only advertised in Louisiana newspapers, it also initiated contact with Runnels in Louisiana through one of its agents. Both of these actions, taken together, constitute purposeful activity in Louisiana such that TMSI Arabia may be compelled to defend this action in a Louisiana forum.

In response to interrogatories from Runnels, TMSI Arabia stated that over the past five years it had placed advertisements in the Baton Rouge Advocate and the New Orleans Times Picayune for overseas employment in Saudi Arabia. In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court noted, as one reason for denying the exercise of personal jurisdiction over defendants, that defendants "solicit no business [in the forum] either through salespersons or through advertising reasonably calculated to reach the state." *Id.* at 295, 100 S.Ct. at 566. In *Loumar v. Smith,* 698 F.2d 759 (5th Cir. 1983), this Court noted that the *Woodson* Court did not hold that "advertising reasonably calculated to reach the state would, without more, permit assertion of personal jurisdiction over the advertiser." *Id.* at 764. *Loumar* involved advertisement in a nationally-circulated trade magazine and the record in that case did not indicate the frequency and the locations in which the defendants advertised their product. Here,

however, the record is clear that TMSI Arabia advertised locally in two Louisiana publications over a five year period for the purpose of soliciting Louisiana residents for overseas employment. In so doing, TMSI Arabia specifically targeted two areas within Louisiana, Baton Rouge and New Orleans, where skilled technicians with knowledge of the oil industry might be found. Accordingly, we conclude that *Loumar* is distinguishable and that the advertisements employed by TMSI Arabia constitute significant contacts with Louisiana.[3]

In *Growden v. Ed Bowlin and Associates Inc.,* 733 F.2d 1149 (5th Cir.1984), we found that the defendant, a Georgia corporation engaged in the business of reselling used aircraft, had insufficient contacts with Louisiana notwithstanding, *inter alia,* its advertisement of an aircraft for sale in two national trade publications which circulated in Louisiana. In so holding, we stated:

> In *Loumar* we recognized that the Texas Supreme Court has held that a defendant's "decision to advertise in Texas telephone directories, in and of itself, is a sufficiently purposeful act [to satisfy due process requirements]," 698 F.2d at 764, *quoting Siskind v. Villa Foundation for Education, Inc.,* 642 S.W.2d 434 (Tex.1982), and noted that the record contained no evidence that the defendants advertised in Texas telephone directories or in other local publications. The record in the instant case is likewise devoid of any evidence that defendant advertised in any local Louisiana directories or publications.

733 F.2d at 1152 n. 6. The record in the instant case uncontrovertibly establishes that TMSI Arabia advertised in local Louisiana publications seeking the employment of Louisiana residents. *Growden,* therefore, also is distinguishable from this case.

Advertisements, placed in local Louisiana publications over a five year period, are not

---

**3.** This activity, in and of itself, may constitute a sufficiently purposeful act to satisfy due process requirements; we need not make such a determination, however, as this activity in conjunction with the telephonic solicitation of Runnels and other such contacts constitute sufficient minimum contacts to allow the assertion of jurisdiction over TMSI Arabia.

the only contacts by TMSI Arabia with Louisiana. Other contacts are present. TMSI Arabia's agent made the initial telephonic contact in Louisiana for the precise purpose of soliciting Runnels for overseas employment. Subsequent to this call, the agent mailed a sample employment contract to Runnels in Louisiana along with other documents to facilitate his acceptance of employment overseas. Later, Runnels received and executed the employment contract that had been sent to his home in Louisiana. While these contacts may be few in number, we have stated that the "number of contacts with the forum state is not determinative of the 'minimum contacts' test; rather, 'the contacts must support an inference that the nonresident defendant purposefully availed himself of the benefits of the forum state....' " *Bean Dredging Corp.*, 733 F.2d at 1083 (quoting *Quasha*, 667 F.2d at 488). These additional contacts, in conjunction with TMSI Arabia's Louisiana advertising, support such an inference and thus constitute sufficient minimum contacts with Louisiana to satisfy due process.

The fact that Runnels' suit is brought pursuant to an alleged breach of the renewal contract which was finalized in Saudi Arabia does not diminish the force of these contacts between TMSI Arabia and Louisiana. First, as we have noted, the renewal contract executed in Saudi Arabia, was merely a renewal of the original contract executed by Runnels in Louisiana; its existence in fact was provided for by certain language in the original contract anticipating "recontract." Second, the finalization of the renewal contract other than in Louisiana is of only slight consequence. As this Court has noted, "finalization of the agreement in Louisiana might have been a contact superior in quality to the actual contacts, taken singly, between [defendant] and Louisiana. However, we conclude that such finalization is by no means necessary either to satisfy the requirements of the statute or to comport with due process." *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 641 n. 21 (5th Cir.1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981). Thus, the mere fact that the initial contacts in Louisiana may not have been directly tied to the renegotiated contract in Saudi Arabia does not weaken our conclusion that TMSI Arabia purposely availed itself of the benefits of soliciting overseas employees in Louisiana and that Runnels' alleged injury resulted from those initial contacts in Louisiana.

As the Louisiana Third Circuit has recognized:

> Louisiana residents recruited in Louisiana through employer activities in Louisiana, were intended by our legislature to have a Louisiana forum available to them for causes of action arising out of these employer activities based in this state, whereby the employers voluntarily and purposefully took advantage of the benefits and the protection of the laws of this state. The Supreme Court of the United States has recognized that Louisiana can constitutionally hold these foreign employers to a consequent duty to respond in our courts to suits to enforce obligations arising out of or connected with these activities in this state.

*Babineaux*, 170 So.2d at 525. We find a forceful analogy in *Dotson v. Fluor Corp.*, 492 F.Supp. 313 (W.D.Tex.1980), a case quite similar to this one on its facts. In *Dotson*, the court noted that the agent for defendant Fluor Arabia hired Texas residents for employment overseas in Saudi Arabia; the court further noted that Fluor Arabia's agent advertised these employment opportunities in a San Antonio newspaper. The court then concluded that "[i]t is apparent that Fluor Arabia has purposefully availed itself of the privilege of employing Texas residents; that it has invoked the benefits and protections of Texas law; and that it should have reasonably anticipated being haled into court here." *Id.* at 317. Because Texas, like Louisiana, extends the scope of its long-arm statute to the limits of due process permissible under the fourteenth amendment, *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir.1973), we find *Dotson* persuasive authority. TMSI Arabia's purpose-

ful activities within Louisiana constitute sufficient minimum contacts with Louisiana "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

### C. Fairness of Louisiana Forum

The second prong of the due process analysis asks whether it would be fair, just, and reasonable to require TMSI Arabia to defend itself in Louisiana courts, for the imposition of jurisdiction must not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. "One factor which weighs heavily in this calculus is Louisiana's 'interest in providing effective means of redress for its residents.'" *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 349 (5th Cir.1984) (quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). The targeted solicitation of Louisiana residents for employment overseas,[4] the consequent drain of technically proficient Louisiana residents and the "economic injury [that] has befallen a resident of Louisiana," *Bean Dredging Corp.*, 744 F.2d at 1085, all support Louisiana's legitimate interest in providing its citizens with reasonable access for redress.

The countervailing consideration is whether it is fair to require TMSI Arabia to defend itself in a Louisiana forum. Because TMSI Arabia solicited Louisiana residents through local advertising and through its agent, because its contacts with Louisiana were deliberate rather than fortuitous, and because it could reasonably foresee that contract disputes would likely arise as a result of its solicitation of United States citizens, it is not unfair to require that TMSI Arabia defend this suit in Louisiana. While it may be less convenient for TMSI Arabia to defend this suit in Louisiana, we find no reason why such inconvenience to TMSI Arabia should outweigh the inconvenience to Runnels of prosecuting the suit in Saudi Arabia; this is particularly so in light of Louisiana's interest in providing a forum for its injured residents and in light of TMSI Arabia's purposeful acts availing itself of the benefits of soliciting Louisiana residents for employment in Saudi Arabia. *See Product Promotions v. Cousteau*, 495 F.2d at 495.

The judgment of the district court dismissing this case for want of jurisdiction over the person is accordingly REVERSED and this case is REMANDED for further proceedings.

---

4. In answer to Runnels' interrogatories, TMSI Arabia stated that over the prior five year period it had solicited and hired 793 United States citizens of whom 6 were Louisiana residents.