**ASSOCIATED MILLS, INC., Plaintiff,**

v.

**RUSH–HAMPTON INDUSTRIES, INC., Defendant.**

**No. 84C 3052.**

United States District Court, N.D. Illinois, E.D.

June 15, 1984.

Sheldon W. Witcoff, John J. Held, Jr., Stephen F. Sherry, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., for plaintiff.

Paul L. Brown, David K. Tellekson, Enrich & Dithmar, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Associated Mills, Inc. ("Associated Mills") has filed a multi-count Complaint against Rush-Hampton Industries, Inc. ("Rush-Hampton"):

1. Count I is brought under the Lanham Act, charging infringement of Associated Mills' federally-registered "Pollenex" trademarks.

2. Count II asserts the federal version of commonlaw unfair competition under Lanham Act § 43(a), 15 U.S.C. § 1125(a).

3. Count III (asserting both diversity of citizenship and pendent jurisdiction) charges unfair competition and deceptive trade practices.

Rush-Hampton has both answered and gone on the attack via affirmative defenses and a counterclaim against Associated Mills' registrations, but its principal interest just now is in transfer to the United States District Court for the Middle District of Florida, Orlando Division under 28 U.S.C. § 1404(a) ("Section 1404(a)"). For the reasons stated in this memorandum opinion and order, that motion is granted.

### Analysis Under Section 1404(a)

In the days before enactment of Section 1404(a), the judicially-created doctrine of forum non conveniens was the courts' only vehicle to moderate the sometimes-unfair effects of the expansion of in personam jurisdiction wrought by *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. Those cases taught it was constitutional to hale a defendant into court in a far-away forum once that forum was shown to have ˙enough contacts with the defendant to support the assertion of jurisdiction (either in "general jurisdiction" or "specific jurisdiction" terms [1]). But constitutionality was not necessarily controlling where the burdens of defense away from home materially outweighed the countervailing considerations favoring the forum— hence "forum non conveniens."

At the same time, the remedy of outright dismissal on forum non conveniens grounds involved substantial costs to the plaintiff. Rejection of the forum as "inconvenient" forced a plaintiff to begin all over again in a new forum: hiring new counsel, adapting the complaint to the new jurisdiction's pleading requirements, having to serve the defendant afresh, dealing with new choice-of-law rules and perhaps new substantive law—and the list can go on.

Understandably then the forum non conveniens doctrine gave a good deal of weight to the plaintiff's forum selection. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) put it simply:

> But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Only when *general* jurisdiction was involved and "none of the conduct complained of occurred in the forum selected by the plaintiff" was the plaintiff's preference viewed as having "minimal value." *Chicago, Rock Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.1955).

Now Section 1404(a) transfers eliminate most of the adverse effects of forum

---

1. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* — U.S. —, — nn. 8 and 9, 104 S.Ct. 1868, 1872 nn. 8 and 9, 80 L.Ed.2d 404 (1984).

non conveniens dismissal recited earlier.[2] It is therefore equally understandable that the plaintiff's choice of forum is not given the same heavy emphasis in Section 1404(a) determinations as under forum non conveniens. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); and see *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981). Instead choice of forum is one relevant factor in the balancing among the trichotomy identified in Section 1404(a): convenience of parties, convenience of witnesses and the interest of justice. Assuredly the forum choice is a component of plaintiff's "convenience," and it may also enter into the "interest of justice" analysis, but it no longer has overpowering force.

■ Here the facts do not literally fit the *Chicago, Rock Island* mold, but they are not far from it. Rush-Hampton has no ongoing Illinois presence as all: It maintains no executive, administrative or sales offices in Illinois, nor does it have any facilities or employees here. It has no Illinois bank accounts or telephone listings, and it is not registered to do business here. It insists it has never made a *sale* of the alleged infringing products within this state, but Associated Mills retorts the accused items were *offered* for sale during the week of April 9, 1984 at the National Housewares Manufacturers Exposition at McCormick Place here in Chicago.

In terms of the basic dispute between the parties, Rush-Hampton's limited Illinois involvement (by displaying merchandise and passing out literature at the Housewares' show) may have been enough to subject it to this Court's power, but it is not the smoking gun that makes such Illinois conduct the principal basis for Associated Mills' claimed relief. Instead the Complaint is about Rush-Hampton's general conduct in having designed and developed its packages and literature featuring the Pollenex name.[3] Consequently this opinion's Section 1404(a) analysis will proceed unburdened by *undue* emphasis on the fact Associated Mills selected Illinois as its chosen forum.

1. *Convenience of the Parties*

"Convenience of the parties" (except as impacted by the convenience of witnesses) is a true standoff. Except for some regional sales offices located elsewhere, Associated Mills is wholly Illinois-based: Its manufacturing and distribution facilities, officers, managing agents, technical personnel and all other employees are located in this District. Rush-Hampton had an identical relationship to Sanford, Florida. Last month it sold its assets relating to the replacement air filter business to General Time Corporation of Phoenix, Arizona, but if and to the extent General Time continues the same business at all (apparently a matter of some question), it does not appear that activity is likely to be transplanted to Arizona. Most importantly, though, the transaction was indeed a sale of assets, and all of Rush-Hampton's own people and records remain in Florida.

One added point should be discussed—the location of documents. That too is usually a standoff except in a case involving massive documents. Each party would of course be discommoded by the need to transport documents to the other's home

**2.** Though new counsel still must be brought into the case:

    1. Plaintiff's complaint survives intact and defendant need not be served anew.

    2. In choice-of-law terms (which would embrace the substantive rules of law as well), the transferee court must apply the doctrines that would have been applied by the transferor. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964); *Gonzalez v. Volvo of America Corp.,* 734 F.2d 1221, at 1223–1224 (7th Cir.1984).

**3.** Nothing in this opinion should be taken as an expression on the merits of the Associated Mills claim or the Rush-Hampton answer and counterclaim. Rush-Hampton concededly uses the Pollenex name and depicts the Pollenex product, but it does so in the context of advertising its own CA/90 brand replacement filters "for use with" Pollenex air cleaners—just as it does for air cleaners produced by other manufacturers. Its "fair use" argument is certainly—at least facially—a colorable one.

base, but the photocopying of documents is always necessary no matter where the lawsuit is to be tried, and their transmittal is often not a really serious burden.

In any case each party would be discommoded by having to litigate on the other's turf. Were this the only element to be considered, Associated Mills' choice of forum would prevail.

### 2. Convenience of Witnesses

Again the same pattern of diverse locations presents itself: Associated Mills' prospective witnesses are in Illinois, while Rush-Hampton's are mostly (but not all) in Florida. But two important differences weight the analysis heavily toward Rush-Hampton:

1. Of the seven potential witnesses identified in the affidavit of Associated Mills' President Richard Stern, several are likely to be unnecessary (or of minimal marginal utility), because there is not likely to be any dispute about the areas Stern identifies for their testimony. Associated Mills' purely optional addition of witnesses should not be allowed to enter heavily into the balance. Moreover Associated Mills can control all its witnesses (all except its advertising firm are its own employees) and could readily deliver them to testify in a Florida lawsuit.

2. Rush-Hampton's President J. Rushton Bailey has identified a comparable roster of prospective witnesses. There are basically the same number of its own people as Associated Mills has set out (except that all the Rush-Hampton witnesses appear to be needed to testify in areas more likely to be controverted), plus an outside advertising agency located at Rush-Hampton's home base.[4] But the sale of its business has occasioned a dramatic change, for it can no longer assure the presence of its key people, and they would not be subject to process here as they would in Florida.

Gulf Oil, 330 U.S. at 511, 67 S.Ct. at 844, made plain a principle that has as much force for Section 1404(a) as it did for forum non conveniens:

> Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.

It is plain the convenience of witnesses tilts very substantially toward Florida. Rush-Hampton's position is far more persuasive.

### 3. Interest of Justice

For the most part the factors enumerated in Gulf Oil that have come to be associated with "interest of justice" analysis (330 U.S. at 508–09, 67 S.Ct. at 843) are equally balanced. Each jurisdiction has much to be said for it, when viewed only from the perspective of the litigant advocating it. But one important factor points to Florida: Examination of the trial calendar for the Florida District Court indicates that trial of civil actions usually takes place within a year of their commencement.

That is far from true here. Our District Court annually ranks first, second or third in the weighted case loads for United States District Courts nationally, and that burden manifests itself in part by substantial delays in getting to trial. Of course litigants may with diligence be *ready* for trial in a year, and this Court has on rare occasions tried a civil case in that kind of time span. But in fairness to all litigants on a calendar of some 400 cases, this Court assigns cases for trial in the order in which they reach the final pretrial order stage. *Right now* cases in that category represent an estimated 40 or more weeks of trial time. Add to that the fact criminal trials regularly appear to occupy from one-third to one-half the active trial time in our Dis-

**4.** Rush-Hampton also had a Boston consulting firm that assisted in the design of its packaging and in developing the concept of promoting and selling replacement air cleaner filters. Because of the location of that firm, it would appear neutral in any consideration of convenience of witnesses.

trict, and the unreality of a trial within one year for a *newly-filed* case is apparent.

Thus the interest of justice too would be served by transfer to Florida. This last of the three Section 1404(a) factors points in the same direction as the convenience of witnesses.

### Conclusion

This Court has considered all the relevant factors mandated by Section 1404(a), including appropriate consideration for Associated Mills' decision to file suit here. Because those factors call for transfer, this action is transferred to the United States District Court for the Middle District of Florida, Orlando Division.