**MET–L–WOOD CORPORATION,**
Plaintiff,

v.

**SWS INDUSTRIES, INC., Defendant.**
(Two cases).

Nos. 84 C 4625, 84 C 5051.

United States District Court,
N.D. Illinois, E.D.

Oct. 9, 1984.

Daniel J. Pope, Susan M. Franzetti, Stephen M. Slavin, Gregory A. Friedman, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for plaintiff.

N.A. Giambalvo, Boodell, Sears, Giambalvo & Crowley, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Met-L-Wood Corporation ("Met-L-Wood") sues SWS Industries, Inc. ("SWS") for breach of contract in each of these related actions. SWS has moved alternatively (1) to dismiss both actions under Fed.R.Civ.P. ("Rule") 12(b)(2) for lack of personal jurisdiction or (2) to transfer them under 28 U.S.C. § 1404(a) ("Section 1404(a)") to the

District Court for the District of New Jersey.[1] For the reasons stated in this memorandum opinion and order, each of SWS' motions to dismiss is denied and each of its motions to transfer is granted.

### Facts

Both parties have submitted affidavits.[2] In the following statement of facts, any factual conflicts have been resolved in favor of the non-moving party (Met-L-Wood) and Met-L-Wood's Complaint allegations have been accepted as true. *Neiman v. Rudolph Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir.), *cert. denied*, 448 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980).

Met-L-Wood, a Delaware corporation with its principal place of business in Bedford Park, Illinois, manufactures panels used in the installation of curtain wall systems. SWS, a New Jersey corporation with its principal place of business in Moonachie, New Jersey, installs window and curtain wall systems in commercial and industrial buildings.

In 1982 two SWS employees visited Met-L-Wood's Illinois offices and plant to assess Met-L-Wood's manufacturing capability. During their visit they discussed with a Met-L-Wood executive general terms and prices offered by Met-L-Wood for the fabrication of curtain wall panels. Following the visit SWS ordered panels from Met-L-Wood for five separate construction projects in New Jersey, two of which ("Mercedes," contracted for in May 1983, and "Hasbrouck," contracted for in August 1983) are the subjects of these actions. Before the manufacture of the Hasbrouck panels and during the manufacture of the Mercedes panels, an SWS agent made two additional inspection visits to Met-L-Wood's plant. SWS and Met-L-Wood also exchanged numerous letters and phone calls.

Both projects required custom-made panels fabricated according to drawings furnished by SWS. SWS also submitted a model of a part that Met-L-Wood was to copy and attach to each panel for both projects. After the panels were manufactured Met-L-Wood delivered them to SWS

---

1. SWS originally—and incorrectly—couched its motion in terms of forum non conveniens (apparently it was under the erroneous impression that Section 1404(a) relief was unavailable to it). It later clarified its intention to seek a transfer to New Jersey rather than an outright dismissal. Having eliminated that dismissal issue from consideration, however, SWS inserted (via its final memorandum) another proposed ground for dismissal: the claimed applicability of Rule 19. Because of this opinion's ruling under Section 1404(a) and the likelihood any possible Rule 19 considerations will disappear once these actions are before the New Jersey District Court, this opinion does not treat with that subject.

2. In some ways SWS has prevailed on the current motion despite itself—certainly its interests have not been advanced by tendering the "affidavit" of Anthony Laino ("Laino"). As every practitioner knows (and as Rule 56(e), for example, reflects), an affidavit is supposed to contain affirmations of basic facts within the personal knowledge of the affiant; it is the statement of the affiant, not his or her lawyer; and it is to contain not conclusory allegations or conclusions of law, but rather matters to which the affiant can testify. Laino's affidavit appears to fail on all counts. Written in third person legalese rather than first person layman's language, it is obviously a summary of SWS' legal brief prepared by SWS counsel. More disturbingly, it is replete with conclusory allegations and legal conclusions such as the following—things that could not possibly be matters of fact within Mr. Laino's knowledge:

   ¶ 11: "... its [defendant's] person is not subject to the jurisdiction of this court."

   ¶ 14: "Defendant's contact with the State of Illinois was the purchase in interstate commerce of the goods in question."

   ¶ 15: "The Northern District of Illinois is not a convenient forum for the adjudication of this dispute. The convenience of the parties and witnesses, as well as the interest of justice would best be served by a trial of the dispute in New Jersey, in that:

   (a) The general contractor and the owner are necessary parties to the adjudication of this dispute;

   (b) The general contractor and the owner are not subject to service of process in the Northern District of Illinois;

   \*    \*    \*    \*    \*    \*

   (h) Complete justice can be done only by a trial in New Jersey";

   and so on. Without quoting all of the troublesome portions of the affidavit, this Court reminds counsel of Rule 11's obligations and of the fact that legal arguments do not take on added weight simply by the addition of a notarized signature of a client.

in New Jersey. Although SWS apparently accepted both sets of panels and made partial payment for them, the general contractor on each project rejected the panels as nonconforming due to discoloration.[3] When Met-L-Wood's efforts to cure proved unsuccessful, SWS refused to make further payments on the contract.

On May 30, 1984 SWS sued Met-L-Wood and the Mercedes general contractor in a New Jersey state court for declaratory judgment of its rights and duties under the Mercedes contract. On June 1 Met-L-Wood sued SWS in this Court for breach of the same contract. Six weeks later Met-L-Wood filed a second contract action against SWS in this District Court for failure to make payments on the Hasbrouck contract.[4]

### Personal Jurisdiction [5]

■ This Court recently discussed at considerable length the standards by which, under Illinois law (applicable here as well), personal jurisdiction over nonresident defendants must be determined. *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341 (1984). Because SWS' primary concern seems to be in having these actions heard in New Jersey as opposed to having them dismissed outright, and because transfer to New Jersey will render Illinois jurisdiction irrelevant, this opinion will abbreviate the detailed analysis in *Club Assistance.*

■ Federal courts sitting in Illinois must separately analyze the Illinois long-arm statute (Ill.Rev.Stat. ch. 110, ¶ 2–209, "Section 2–209") and the constitutional constraints of due process to determine the existence of personal jurisdiction over nonresident defendants. *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 589 (7th Cir.1984). This opinion therefore addresses both considerations.

As relevant for current purposes, the long-arm statute establishes personal jurisdiction over a nonresident "as to any cause of action arising from ... the transaction of any business" in Illinois. Section 2–209(a). "Transaction of business" may perhaps require more than "mere solicitation" (*Loggans v. Jewish Community Center,* 113 Ill.App.3d 549, 556, 69 Ill.Dec. 484, 489, 447 N.E.2d 919, 924 (1st Dist.1983)), though that has been cast in some doubt by the Illinois Supreme Court's most recent pronouncement in the field, *Maunder v. DeHavilland Aircraft of Canada, Ltd.,* 102 Ill.2d 342, 351–52, 80 Ill.Dec. 765, 769–770, 466 N.E.2d 217, 221–22 (1984). But in any event our Court of Appeals has made it clear in two recent cases that nearly anything beyond solicitation qualifies as the transaction of business. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1216 (1984) found the "transaction of business" requirement satisfied by two conversations defendant's agent held in Illi-

---

3. SWS does not specify whether the same general contractor was involved in both the Hasbrouck and Mercedes projects. For convenience in discussion (and because it makes no substantive difference), this opinion will speak in terms of only one general contractor. More significantly for purposes of this motion, this Court will accept the contention in SWS' memoranda that the general contractor is not subject to process in Illinois. Met-L-Wood never disputes that proposition. It should be pointed out, though, SWS never names the general contractor or states the underlying facts rendering the contractor and its employees immune to process here. Laino's affidavit asserting the contractor is beyond Illinois process is entitled to little or no weight (see n. 2).

4. That second case was reassigned to this Court on relatedness grounds under this District Court's General Rule 2.31.

5. SWS' memorandum argues Met-L-Wood's complaint fails both statutory and constitutional requirements, because it alleges only an interstate sale of goods from Illinois for delivery and installation in New Jersey. While it is true the Complaint's recitals alone may not satisfy due process requirements (*Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir.1979)), plaintiff is not required to allege in the complaint all facts on which personal jurisdiction is based. Met-L-Wood has submitted an affidavit detailing additional contacts (described in the "Facts" section of this opinion) between SWS and Illinois. This Court may determine the existence of personal jurisdiction on the basis of *both* the complaint and the affidavits. *Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983).

nois to discuss the purchase and repair of equipment that was the subject of the suit. In *Jacobs/Kahan,* 740 F.2d at 590, defendants' sole contact with Illinois was sending an agent to Chicago on one occasion to inspect plaintiff's operations, finish negotiating its service contract with plaintiff and sign the contract. That partial negotiation and execution in Illinois were held the "transaction of business" (*id.*).

These actions plainly resemble both *Jacobs/Kahan* and *Deluxe Ice Cream* in that SWS agents made three separate visits to Met-L-Wood's plant in Illinois, the first before entering into the contracts and the others to inspect the work in progress. Those visits obviously satisfy the "transaction of business" requirement under the teaching of the cases.

SWS argues the visits by its agents do not satisfy the "arising from" language of Section 2–209 because the contract dispute arose from the manufacture of the panels, not from the visit by the SWS employees. Such a reading is far too narrow. *Jacobs/Kahan* emphasized "arising from" is to be construed broadly to encompass any cause of action that "lie[s] in the wake" of the transaction of business. Both contracts in issue may fairly be said to have resulted directly from SWS' initial Illinois visit. And suits on those contracts surely "lie in the wake" of their execution.

As for the due process standard, that requires a defendant to have "minimum contacts" with the forum state (*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) such that it would be reasonable to subject him to suit in that state. *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292–93, 100 S.Ct. 559, 564–55, 62 L.Ed.2d 490 (1980). There must be "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

SWS attempts to liken this case to *Lakeside Bridge and Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596 (7th Cir.1979), in which our Court of Appeals found insufficient the minimum contacts between Wisconsin and the defendant, a purchaser of parts manufactured in that state. There however defendant's agents had never been to Wisconsin or transacted any business there. Instead defendant merely contracted to buy parts that plaintiff chose to manufacture in Wisconsin. Nothing in the contract required any performance to take place in Wisconsin. Here, on the other hand, SWS visited Illinois three times—importantly those visits included inspection of Met-L-Wood's production facilities both before and during Met-L-Wood's actual manufacture of the goods. SWS' visits gave rise to five separate contracts with Met-L-Wood. Those factors provide a dramatic contrast with, and remove this case from the ambit of, *Lakeside Bridge.*

Indeed the simple fact that SWS agents visited Illinois to have discussions significant to the formation and performance of the contracts establishes adequate "minimum contacts" to satisfy due process. *Deluxe Ice Cream,* 726 F.2d at 1213 and cases cited there. Given the importance of Illinois to the contracts, SWS could "reasonably anticipate being haled into court" here. *Worldwide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. Because of the clear existence of jurisdiction and this Court's decision (next discussed) to transfer these actions to New Jersey, this opinion need not dwell on other interesting jurisdictional issues, such as whether the mere fact that there were multiple contracts between Met-L-Wood and SWS might alone render *Lakeside Bridge* inapplicable.

### Section 1404(a) Transfer

Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice," to any district where an action "might have been brought." Because SWS is a New Jersey corporation with its principal place of business in that state, these actions could clearly have been brought in the District of New

Jersey. Thus the issue becomes whether the other statutory criteria require such a transfer.

For that purpose the factors to be taken into account strongly resemble those described in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) for deciding forum non conveniens cases, although this Court has broader discretion under Section 1404(a) than under the older doctrine of forum non conveniens. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). This Court has recently discussed the relationship between the two doctrines in *Associated Mills v. Rush-Hampton Industries, Inc.,* 588 F.Supp. 1164 (N.D.Ill.1984).

As *Associated Mills* points out, plaintiff's choice of forum is a factor to be considered (albeit a less weighty factor in transfer cases than in forum non conveniens cases, *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955)). It is defendant's burden to show the balance of all factors (including choice of forum) weighs significantly in favor of transfer.

As for the "convenience ... of witnesses" (and the related portion of the "convenience of parties" that · represents), the matter is at worst pretty much a tossup—and at best it may favor SWS substantially. Met-L-Wood and all its employees involved in this matter are located in Illinois, while SWS and its people are in New Jersey. It is too early in the litigation to count with any degree of precision the number of witnesses each side will call, so there is no

sure indication that fewer Met-L-Wood employees and other Illinois witnesses would testify than SWS employees and other New Jersey witnesses.[6] Because the latter does seem more likely, though, it appears Met-L-Wood and its witnesses would be inconvenienced by a New Jersey venue to either a substantially lesser extent than, or at most the same extent as, SWS and its witnesses would be inconvenienced by the Illinois venue.

Each side argues its preferred venue is more convenient because of the location of documents. That is not an important factor, however, unless documents are so voluminous that their transport is a major undertaking. That is not so here. Moreover, neither side has shown it has significantly more documents than the other that would require transport. That consideration of the parties' convenience, then, results in a draw.

But the interests of justice clearly compel transfer to New Jersey because of at least one crucial fact:[7] SWS's general contractor is not subject to service of process in Illinois. That poses at least two problems:

1. Because it was the contractor that determined the panels were nonconforming, its employees are important witnesses in these actions. Any risk those employees would refuse to testify in Illinois would be eliminated by a transfer to New Jersey.[8]

2. More importantly, this dispute cannot be fully resolved unless the contractor is impleaded by SWS, which · per-

---

6. SWS urges (without particularization) that the need to call officers and employees of the general contractor, the building owners and the architect will tip the balance substantially toward New Jersey. That assertion seems probable on its face, and if so it would simply fortify this opinion's later-expressed conclusion compelled by the "interest of justice" factor. But because SWS' submission is not specific and detailed as to just whose testimony is needed and on what subjects, this opinion does not lean heavily on this added factor.

7. SWS also raises a second factor associated with the "interest of justice" analysis—access to the construction sites containing the panels. Such access may well be important as a means

of determining whether the panels as produced satisfied Met-L-Wood's contract obligations. That question need not be resolved, however, for it would only buttress the decision to transfer.

8. Met-L-Wood counters by arguing the employees of the Illinois firms that applied color coating and polished the panels are necessary witnesses and are beyond New Jersey process. But Met-L-Wood has not shown why those witnesses are relevant. Instead the essential issues framed by the pleadings appear to be what specifications the parties agreed to and whether the finished product met those specifications. In those terms the process by which the panels were colored seems irrelevant. Even were it

suasively claims to be caught in the crossfire between the contractor's rejection of the panels and Met-L-Wood's demands for payment. In fact the first move of either party to invoke judicial aid was SWS' action in a New Jersey state court for declaratory relief from the competing positions of Met-L-Wood and the general contractor for the Mercedes project.[9] It would be directly contrary to the interest of justice to resolve only half the dispute in Illinois, thereby creating (a) the potential of inconsistent decisions or (b) the need to manage the logistics of a deferred second action in New Jersey involving the general contractor.

### Conclusion

SWS is in court in jurisdictional terms. That has mandated consideration of all the factors made relevant by Section 1404(a). Because those factors clearly call for transfer, SWS' Section 1404(a) motions are granted and both these actions are transferred to the United States District Court for the District of New Jersey.

See also, D.C., 594 F.Supp. 713.

---

otherwise, though, the factors identified in the text as to absence of the general contractor from these actions would far outweigh the consideration in this footnote.

**9.** SWS has moved for a stay of these federal actions pending adjudication of the state court proceeding. Such a decision is better left to the federal District Court in New Jersey. Certainly were the roles reversed this Court would prefer to reach its own decision as to the status and handling of cases on its own calendar.