**HARRIS TRUST AND SAVINGS BANK, Plaintiff,**

v.

**SLT WAREHOUSE COMPANY, INC., Defendant.**

**No. 84 C 9991.**

United States District Court, N.D. Illinois, E.D.

March 28, 1985.

James M. Breen, James F. Gebhart, Chapman & Cutler, Chicago, for plaintiff.

Donald L. Mrozek, Keith E. Graham, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harris Trust and Savings Bank ("Harris") has charged SLT Warehouse Company, Inc. ("SLT") with breach of duty and failure to exercise due care as a warehouseman of grain in which Harris held a security interest. SLT now moves under 28 U.S.C. § 1404(a) ("Section 1404(a)") for transfer of this action to the United States District Court for the Western District of Kentucky. For the reasons stated in this memorandum opinion and order, the motion is granted.

### Facts

Both Harris' place of incorporation and its principal place of business are in Illinois. As to SLT, both those relationships are with Missouri. SLT is licensed to do business in both Illinois and Kentucky and conducts field warehousing operations in both states.

This action arises out of warehousing services SLT provided to Wathen's Elevators, Inc. ("Wathen's")[1] in Henderson County, Kentucky between 1977 and 1982. To obtain credit from Harris for grain purchases, Wathen's turned over to SLT control of the grain storage facilities and inventory on Wathen's property. Wathen's would purchase grain from farmers and store it with SLT. SLT would issue a non-negotiable warehouse receipt to Harris, to secure the latter's interest in the

---

**1.** That convenient shorthand reference is a possessive noun, making it awkward to engage in proper usage where that noun is itself employed in the possessive form (as in "Wathen's's employees"). With apologies to grammatical purists, for ease of expression this opinion will cheat a bit by simply referring, for example, to "Wathen's employees."

grain. SLT could not release grain for resale without Harris' prior approval.

SLT hired Wathen's bookkeeper and office manager Raymond Sheets ("Sheets") to conduct SLT's warehousing operation on Wathen's premises. Sheets' duties to SLT included maintaining grain elevator and inventory records, preparing and issuing the warehouse receipts to Harris and obtaining executed withdrawal records for grain released for shipment. Harris in turn employed the First National Bank in Henderson ("Henderson Bank") as its agent to deal with Sheets and SLT. Henderson Bank processed the paperwork, including the warehouse receipts, for Wathen's line of credit. Upon notification by Henderson Bank that the proper paperwork had been completed, Harris would wire funds to Wathen's.

In March 1982 Wathen's ceased operations and filed for bankruptcy. When Harris attempted to enforce its security interest in Wathen's remaining inventory it discovered soybeans and white corn valued at over $435,000 were missing. Harris then filed its Complaint here against SLT:

> 1. Counts I and II charge SLT with failure to exercise the due care required of warehousemen under Kentucky common law.
>
> 2. Count III asserts SLT (through Sheets) breached its duty to notify Harris of a change in Wathen's financial condition that rendered Wathen's unable to perform its agreement with Harris.
>
> 3. Count IV charges SLT violated its Kentucky statutory duty (Ky.Rev.Stat. § 359.110) to deliver grain promptly upon demand by Harris.

Wathen's bankruptcy has also given rise to other lawsuits currently pending in the Western District of Kentucky.

### Section 1404(a) Standards

■ Section 1404(a) provides:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As this Court has had frequent occasion to explain,[2] a district court's discretion to transfer a case under Section 1404(a) is broader than its discretion to dismiss under the older doctrine of forum non conveniens. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). Section 1404(a) does not accord plaintiff's choice of forum the decisive weight it enjoyed under forum non conveniens. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981). Today the choice of forum is only one of many factors to consider. And for over 30 years it has been clear that factor merits minimal consideration where (as here) the chosen forum bears no relation to the events giving rise to the cause of action. *Chicago, Rock Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.1955); *Berks v. Rib Mountain Corp.*, 571 F.Supp. 500, 501 n. 2 (N.D.Ill.1983).

■ Nonetheless a transfer will not be ordered "if the result is merely to shift the inconvenience from one party to another." 15 Wright & Miller, *Federal Practice & Procedure: Jurisdiction* § 3848, at 246. SLT has the burden of demonstrating that litigation of this action in Illinois would result in a "clear balance of inconvenience." *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1050 (N.D.Ill. 1982).

That balancing process involves the factors identified in Section 1404(a): the convenience of parties and witnesses and "the interest of justice." As for the last catchall item, *Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (citations omitted) recapitulated from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (the classic case on forum non conveniens) the various con-

---

**2.** See, e.g., *Associated Mills, Inc. v. Rush-Hampton Industries*, 588 F.Supp. 1164, 1165–66 (N.D. Ill.1984).

siderations generally grouped under the "interest of justice" rubric:

> The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." ... The public factors bearing on the question included the administrative difficulties flowing from Court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

### Applying the Standards [3]

#### 1. Convenience of Parties

Harris contends there is a major imbalance in the "convenience of parties" factor because Missouri corporation SLT would be equally inconvenienced by an Illinois or Kentucky venue, while Illinois-based Harris would find litigating here much more convenient than a Kentucky venue. However, two items on the Kentucky side of the balance tip the scales back most of the way toward equilibrium:

1. Because the actors, events and property at issue in this lawsuit are all located in Kentucky (Hinderer Aff. ¶ 4), all direct discovery must be carried out there. Harris would thus have to carry on substantial litigation activities in Ken-

tucky even if Illinois venue were preserved.

2. SLT is already involved in extensive litigation in Kentucky related to Wathen's bankruptcy (Hinderer Aff. ¶¶ 6, 7, 8). It would therefore find a Kentucky venue significantly more convenient than an Illinois venue, where it would also have to retain additional counsel.

In sum, "convenience of parties" weighs only slightly in Illinois' favor.

#### 2. Convenience of Witnesses

"Convenience of witnesses" strongly favors Kentucky. Certainly the most important witnesses in this action are Sheets and the other Wathen's and Henderson Bank employees involved in the operation of the Wathen's grain elevator. All those people are Kentucky residents (Hinderer Aff. ¶ 9).[4]

Harris attempts to avoid that obvious analysis by (1) identifying two Illinois employees it intends to call as witnesses and (2) urging SLT has not committed itself to calling a single specific Kentucky resident. But those arguments are only so much smoke:

1. Harris' employee-witnesses would only authenticate documents and verify account balances (Breen Aff. ¶ 9). Even were that testimony not obviated by stipulation (as it might well be), it would not be nearly as important as that of Sheets and other Kentucky occurrence witnesses.

2. Harris is disingenuous in contending SLT fails to identify a single Kentucky witness. Harris' own complaint singles out Kentucky resident Sheets as the most important actor in this affair. And although it is too early for SLT to commit itself to calling specific witnesses, SLT has clearly indicated—and Harris

---

**3.** Both parties agree this action could have been brought originally in either Kentucky (where the action arose) or Illinois (Harris' residence). This opinion will therefore discuss only the "balance of convenience" in litigating in one or the other of those forums.

**4.** Contrary to Harris' assertions, SLT does not simply assume potential witnesses are Kentucky residents. SLT has tendered the affidavit of Amy Rehm Hinderer, its counsel in the Kentucky litigation, stating all Wathen's and Henderson Bank employees are Kentucky residents.

must concede—the prime prospects are *all* Kentuckians.

### 3. Interest of Justice

 "Interest of justice," as given content in *Piper Aircraft,* also points decidedly toward Kentucky. Of the four relevant considerations in this area,[5] two favor Kentucky slightly and two do so strongly.

(a) *Access to grain elevators.* Kentucky-based litigation would allow inspection of the location where the grain was stored. That must be viewed as no more than a marginal consideration, because there is no indication at this stage of the proceedings that such access will be necessary.

(b) *Judicial economy.* SLT and Harris differ strenuously over the state of Wathen's non-bankruptcy litigation in the Western District of Kentucky. There is no assurance that any aspect of this litigation could be coordinated with that pending in Kentucky. But a Kentucky venue offers at least the remote possibility of such coordination, while none exists in Illinois.

(c) *Application of Kentucky law.* Kentucky common and statutory law govern this action. *Piper Aircraft,* 455 U.S. at 285, 102 S.Ct. at 255 teaches a diversity case should, when possible, be decided by a court most at home with the applicable state law. Harris retorts the Kentucky law to be applied here is simple and should therefore not be a factor in the current motion. But at this early stage only a soothsayer could predict how sticky the legal issues might become. Moreover, no matter how simple the law may be, *Piper Aircraft* (drawing on *Gulf Oil*) also stresses the "local

interest in having localized controversies decided at home."[6]

(d) *Availability of compulsory process.* There is no contest on this important factor. Key witness Sheets is a Kentucky resident and is not currently an employee of SLT (Harris Surreply Mem. 1). Thus neither the parties nor this Court could compel him to testify in Illinois. Other Wathen's and Henderson Bank employees appear to be in the same position. Although the lack of compulsory process is normally not a strong factor unless the potential witness has demonstrated recalcitrance, it would be imprudent to proceed in a forum where *none* of the important witnesses is subject to process. That would unnecessarily risk a major impediment to an effective trial.

### Conclusion

 This is clearly a Kentucky case. Although the convenience of the parties favors Illinois slightly, the convenience of witnesses and the interest of justice far overbalance the scales toward Kentucky. SLT's motion is granted, and this action is transferred to the Western District of Kentucky.

---

**5.** Although SLT argues the location of Wathen's and Henderson Bank's records point in Kentucky's favor, it has offered no facts indicating those records are so voluminous that photocopying and transport would be a problem. Consequently that factor does not have any real force on the present showing. *Met-L-Wood Corp. v. SWS Industries, Inc.,* 594 F.Supp. 706, 710 (N.D.Ill.1984).

**6.** Harris and SLT dispute which state has a greater interest in the litigation. Harris invokes Illinois' interest in protecting its citizens from economic injury. But that concern is more germane to a choice-of-law dispute. In that respect the applicable law is not affected by a Section 1404(a) transfer. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964).