Jose GONSALEZ MORENO, Jacinto Ortega, Plaintiffs,

v.

MILK TRAIN, INC., Armando Alvarez, dba AG–Labor Services, Inc., Defendants.

No. EP–01–CA–253–DB.

United States District Court, W.D. Texas, El Paso Division.

Jan. 24, 2002.

Constance Russell Wannamaker, Texas Rural Legal Aid, El Paso, TX, for plaintiffs.

Charles E. Woods, Short, How, Frels & Heitz, P.C., for defendants.

### MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant Milk Train, Inc.'s ("Milk Train") "Motion to Dismiss for Lack of Personal

Jurisdiction, Motion to Dismiss for Improper Venue, or in the Alternative Motion to Transfer Venue," filed in the above-captioned cause on September 7, 2001. Plaintiff Jose Gonsalez Moreno and Plaintiff Jacinto Ortega (collectively "Plaintiffs") filed a Response on September 21, 2001.

After due consideration, the Court is of the opinion that Milk Train's Motion should be denied for the reasons that follow.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs, residents of Texas, brought this action pursuant to the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"), 29 U.S.C. §§ 1801–1872, against Defendants Milk Train and Armando Alvarez, doing business as AG–Labor Services, Inc., ("AG–Labor Services"). Plaintiffs are migrant farm workers whose permanent place of residence is El Paso County, Texas. Milk Train is a dairy located in Sprakers, New York. AG–Labor Services is a farm-labor contracting agency based in Texas. In 1999 and 2000, Milk Train recruited and hired Plaintiffs, through AG–Labor Services, to work for Milk Train in New York. Prior to leaving for New York, Plaintiffs signed an employment contract with Defendants.

Plaintiffs raise five claims under the AWPA, alleging that Defendants violated (1) 29 C.F.R. § 500.75(b)(6) by failing to disclose in writing the availability of workman's compensation insurance; (2) 29 U.S.C. § 1821(f) by knowingly providing false and misleading information regarding the conditions of employment; (3) 29 U.S.C. § 1822(c) by failing to comply with the terms of the working arrangement; (4) 29 U.S.C. § 1822(a) by failing to pay each Plaintiff the wages owed; and (5) 29 U.S.C. § 1821(d)(2) by not providing wage receipts to Plaintiff Ortega. Plaintiffs also raise the state law claims of breach of contract, fraud, including fraudulent inducement and misrepresentation to enter into the contract, negligent misrepresentation, and retaliatory discharge.

## DISCUSSION

Milk Train filed the instant "Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue, or in the Alternative Motion to Transfer Venue," ("Motion to Dismiss for Lack of Personal Jurisdiction," "Motion to Dismiss for Improper Venue," and "Motion to Transfer Venue"), to which Plaintiffs filed a Response. Therein, Milk Train asks the Court to dismiss this cause for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Milk Train also contends that, pursuant to 28 U.S.C. § 1391(b) or 29 U.S.C. § 1854(a), venue is not proper in this District. Milk Train urges the Court, therefore, to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or transfer this action to the Northern District of New York. Alternatively, Milk Train asks the Court to transfer this cause to the Northern District of New York for the convenience of the parties under 28 U.S.C. § 1404(a).

### A. Personal Jurisdiction

Milk Train asks the Court to dismiss this cause for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In support, Milk Train argues that Plaintiffs have neither established that Milk Train has "minimum contacts" with Texas sufficient to confer on this Court personal jurisdiction over it, nor that this Court's exercise of jurisdiction over Milk Train comports with traditional notions of "fair play and substantial justice."

In general, a plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing jurisdiction. *See Bullion v. Gillespie,* 895 F.2d 213, 216–17 (5th Cir.1990). Where a court rules on such motion a without holding an evidentiary hearing, the court must accept as true all uncontroverted allegations in the complaint and resolve all factual conflicts presented by the parties' affidavits in the plaintiff's favor. *Id.* at 217. Thus, absent a hearing, the plaintiff need only establish a *prima facie* case for personal jurisdiction. *Id.*

Because AWPA is silent with regard to personal jurisdiction, this Court may exercise personal jurisdiction over only those defendants who are subject to the jurisdiction of Texas courts. *Aviles v. Kunkle,* 978 F.2d 201, 203–4 (5th Cir.1992)(per curiam). To determine whether a nonresident defendant is subject to jurisdiction, the Court must first determine whether the Texas long-arm statute permits the exercise of jurisdiction over that Defendant. *Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir.1993). The Court must then determine whether such exercise comports with due process. *Id.* The Texas long-arm statute confers personal jurisdiction over nonresidents to the fullest extent allowed by the Due Process Clause of the United States Constitution. *Id.* (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990)) (interpreting the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–17.045 (Vernon 1997 & Supp.2002)); *see also Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 854 (5th Cir.2000). Thus, the Court need only determine the latter inquiry, whether exercising jurisdiction over Milk Train is consistent with the Due Process Clause.

Due process requires (1) the defendant to have established "minimum contacts" with the forum state; and (2) that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Ham,* 4 F.3d at 415 (citing *Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). To establish "minimum contacts" with a forum state, a nonresident defendant "must have purposefully availed himself of the benefits and protections of the forum state...." *Marathon Oil Co. v. A.G. Ruhrgas,* 182 F.3d 291, 294–95 (5th Cir.1999) (*quoting Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994)). The defendant's connection with the forum state should be such that he or she reasonably should anticipate being haled into court there. *Marathon Oil Co.,* 182 F.3d at 295. "The 'minimum contacts' prong can be subdivided into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Id.* (citing *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201 (5th Cir.1996)). Specific jurisdiction requires some direct relationship—a nexus—between the purposeful contacts and the litigation. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction, on the other hand, relates to contacts, even if unrelated to the cause of action, which "are continuous, systematic, and substantial." *Id.* (citing *Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1868 and *Wilson,* 20 F.3d at 649).

Plaintiffs do not suggest that the Court can exercise general jurisdiction over Milk Train. Hence, the applicable inquiry is whether the Court may exercise specific jurisdiction. In order to demonstrate specific jurisdiction, Plaintiffs must show that Milk Train has "purposefully directed" its activities at the residents of the forum. *Burger King Corp.,* 471 U.S.

at 472, 105 S.Ct. at 2182. Secondly, Plaintiffs must show the litigation resulted from the alleged injuries that "arise out of or relate to" Milk Train's activities directed at the forum. *Id.* (citing *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872). Finally, the Court must examine the relationship between the defendant, the forum, and the litigation to determine whether maintaining the suit offends "traditional conceptions of fair play and substantial justice." *Id.* at 464, 476–77, 105 S.Ct. at 2177, 2184 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)).

■ Plaintiffs argue that Milk Train purposefully directed its activity at the residents of Texas and purposefully availed itself of the benefits and protections of Texas. The Court agrees. Milk Train contacted AG–Labor Services to recruit Texas residents for employment in New York and paid AG–Labor Services a contracting fee for each laborer it provided. Milk Train hired Plaintiffs as a result of the recruitment activity of its agent, AG–Labor Services. Finally, Plaintiffs signed their employment contracts in Texas. As a preliminary matter, the Court notes that Milk Trains's actions are defined as acts constituting business in this state by the Texas long arm statute. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). A nonresident does business in Texas if the nonresident "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." *Id.* § 17.042(3). In addition to recruiting Plaintiffs, Milk Train provided AG–Labor Services with the terms and conditions of employment for Plaintiffs. Milk Train also paid Plaintiffs bus fare to New York and supplied Plaintiffs with a sixty-dollar travel loan.

The Court notes the Fifth Circuit's decision in *Aviles v. Kunkle.* In *Aviles,* families of migrant farm workers filed suit in the federal district court in Texas against employees of an Ohio farm, raising claims based on federal employment laws. The Fifth Circuit held that the district court did not have jurisdiction over the nonresident defendants because the "[d]efendants' only contact with Texas was one telephone call and one letter which merely advised plaintiffs of the start date of the employment they had already accepted the previous summer in Ohio." *Aviles,* 978 F.2d at 205. *See also Colwell Realty Inv. Inc. v. Triple T Inns of Az., Inc.,* 785 F.2d 1330, 1334 (5th Cir.1986) (noting that merely contracting with a resident of the forum state is insufficient to subject a nonresident to the forum's jurisdiction).

The facts of the case before this Court require a different result than that in *Aviles.* The contacts between Milk Train and Texas significantly exceeded one telephone call and one letter. As stated above, Plaintiffs were recruited in Texas and their employment contracts were signed in Texas. Milk Train also provided AG–Labor Services with the terms and conditions of Plaintiffs' employment, paid Plaintiffs' bus fare, and provided Plaintiffs with a travel loan.

In addition, Plaintiffs' claims are based both on the events that occurred in New York and on Milk Train's contacts, or more specifically the employment contract, with this state. Among other claims, Plaintiffs allege that Milk Train fraudulently misrepresented material matters to induce Plaintiffs to enter the contract. Plaintiffs also allege that Milk Train negligently misrepresented the terms of the employment contracts. In other words, Plaintiffs allege that Milk Train's contacts with Texas give rise to an intentional tort. The Fifth Circuit has found that, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of ac-

tion, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir.1999). Moreover, in *Aviles,* the Fifth Circuit found that the plaintiffs' case was based only on the violation of two federal statutes and expressly stated that the plaintiffs' case "was not based upon any contract, tort, or recruitment in Texas, but upon the alleged violation of two federal statutes arising solely out of their employment in Ohio." *Aviles,* 978 F.2d at 205.

This case is factually similar to *Runnels v. TMSI Contractors, Inc.,* 764 F.2d 417 (5th Cir.1985). In *Runnels,* the plaintiff, who was recruited for employment by a nonresident defendant, sued his employer in Louisiana for breach of employment contract. The Fifth Circuit found that the nonresident's activities of recruiting Louisiana employees, by advertising "in Louisiana newspapers ..." and initiating contact with the plaintiff in the forum state "through one of its agents," amounted to purposeful activity sufficient to subject defendant to jurisdiction in the forum state. *Id.* at 421. The Court found it especially important that the defendant mailed a sample and actual employment contract along with other documents to facilitate the employment. *Id.; see also Dotson v. Fluor Corp.,* 492 F.Supp. 313, 317 (W.D.Tex.1980) (finding that the defendant purposefully availed itself by using its agent to recruit Texas employees to work oversees in Saudi Arabia).

█ Accordingly, after due consideration, the Court is of the opinion that Milk Train purposefully directed its activities at the residents of Texas. The Court is further of the opinion that the litigation is related to the contacts with Texas. Because the Court finds that there are minimum contacts in the present case, the Court is obligated to consider the contacts in light of other factors to determine whether the assertion of personal jurisdic-

tion over Milk Train would comport with "traditional notions of fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *International Shoe Co.,* 326 U.S. at 320, 66 S.Ct. at 160. When determining the issue of fundamental fairness, courts will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

With respect to the first factor, the Court is of the opinion that Milk Train does not bear a substantial burden in defending this suit in Texas. It is apparent that Plaintiffs, on the other hand, will be severely hampered if they are forced to pursue their claims in New York.

The Court is further of the opinion that the state of Texas has an interest in asserting jurisdiction over Milk Train. Foremost, "Texas has a significant interest in preventing its citizens from being exploited by out-of-state employers." *Astorga v. Connleaf, Inc.* 962 F.Supp. 93, 96 (W.D.Tex.1996). Texas also has a legitimate interest in offering its residents an adequate forum for redress, especially in light of the fact that its residents were targeted for employment in another state. *See Runnels,* 764 F.2d at 423 (finding that the exercise of jurisdiction over a nonresident defendant comported with fair play because the defendant targeted Louisiana residents for employment overseas and because Louisiana had a legitimate interest in providing its citizens with reasonable access for redress). The state of Texas also has an interest in enforcing the specif-

ic provision of its long-arm statute, which provides that a nonresident who recruits Texas residents for employment outside the state, directly or through an intermediary located in the state, is doing business in Texas and subject to service of process in Texas. TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.042(3), 17.043 (Vernon 1997); *see also Astorga*, 962 F.Supp. at 96.

In sum, factors one and two weigh in favor of Texas exercising jurisdiction over Milk Train. Factor three also weighs in favor of jurisdiction in Texas because Texas is a more convenient forum for Plaintiffs. Factor four, the judicial system's interest in efficient resolution of controversies, weighs neither for or against exercising jurisdiction in Texas given that suit in either New York or Texas courts could be resolved with equal efficiency. Additionally, this case is still in the early stages s of development so forcing Plaintiffs to file in New York may not effect the efficiency of the proceeding. The fifth factor is also neutral in that both states have a shared interest in furthering the substantive social policies outlined and codified in AWPA.

Thus, in light of the fact that three of the factors articulated in *Asahi* weigh in favor of this Court's exercise of personal jurisdiction over Milk Train, and the remaining factors are neutral, the Court is of the opinion that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." Accordingly, after due consideration, the Court is of the opinion that Milk Train's "Motion to Dismiss for Lack of Personal Jurisdiction" should be denied.

### B. Forum Selection Clause

Milk Train argues that Plaintiffs signed a contract that contained a forum selection clause which requires that this suit be brought in New York. Milk Train further contends that the forum selection provision

should have equal, if not greater, bearing on the Court's determination of jurisdiction. Milk Train contends that, because of the forum selection clause, this Court cannot exercise jurisdiction. Milk Train further argues that venue is improper in the Western District of Texas because of the forum selection clause and that, consequently, the Court should transfer this cause to the Northern District of New York. Finally, Milk Train contends that the forum selection clause is a central factor in determining whether this cause should be transferred for the convenience of the parties.

As a preliminary matter, the Court notes that the Fifth Circuit has not yet determined whether a forum selection clause should be analyzed as a limit to personal jurisdiction, a designation of venue, or a foundation for a motion for forum non conveniens. *See Haynsworth v. The Corporation*, 121 F.3d 956, 961 (5th Cir. 1997) (stating "[a]s the parties do not raise it, we therefore need not reach the considerably more enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under FED.R.CIV.P. 12(b)(1), 12(b)(3), or 12(b)(6), or 28 U.S.C. § 1406(a)") This Court, however, does not need to determine the issue because the Court finds that the forum selection clause is unenforceable.

There is no dispute that a forum selection clause is a contractual provision that, at a minimum, purports to designate an exclusive forum or venue for a cause of action. If enforceable, one of the parties has waived his right to file suit in other proper fora, or in other proper venues. Here, however, AWPA provides that "[a]greements by employees purporting to waive or modify their rights under this chapter shall be void as contrary to public policy...." 29 U.S.C.A. § 1856 (West

1999). AWPA guarantees that employees shall have the right to file suit in "any district in the United States having jurisdiction of the parties ..." *Id.* § 1854(a). Accordingly, the Court is of the opinion that the forum selection clause is unenforceable because Plaintiffs may not contractually waive their statutory right to file suit in "any district court of the United States having jurisdiction of the parties...." *Id.*

## C. Improper Venue

Milk Train also challenges venue in the Western District of Texas pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Specifically, Milk Train contends that venue is improper under 28 U.S.C. § 1391(b) because Milk Train does not reside in Texas, a substantial portion of the events occurred in New York, and this action could have been brought in New York.

 The Court is of the opinion that venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Additionally, venue is proper under AWPA, which provides that "[a]ny person aggrieved by a violation of this chapter ... may file suit in any district court of the United States having jurisdiction over the parties ... without regard to citizenship of the parties...." 29 U.S.C.A. § 1854(a)(West 1999). Because the Court has found that it may properly exercise personal jurisdiction over the Parties, including Milk Train, venue is therefore proper. *See Stewart v. Woods,* 730 F.Supp. 1096, 1097 (M.D.Fla.1990) (finding that, in a suit under AWPA, if a court has jurisdiction, then venue is proper).

Accordingly, after due consideration, the Court is of the opinion that Milk Train's "Motion to Dismiss for Improper Venue" should be denied.

## D. Transfer Venue for Convenience of the Parties

Milk Train asks the Court to transfer this cause to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a), which provides for discretionary transfer of venue for the convenience of the parties. The Court finds that Milk Train has failed to show that the balance of convenience and justice weigh in favor of transferring this cause.

The venue transfer statute, 28 U.S.C. § 1404(a), provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1993). The party seeking the transfer bears the burden of demonstrating that the Court should, in its sound discretion, transfer the action. *Hall v. Envtl. Chem. Corp.,* 64 F.Supp.2d 638, 644 (S.D.Tex. 1999).

Preliminarily, the Court notes that the Northern District of New York is a district in which the case might have been brought. *See* 28 U.S.C.A. § 1391(b) (West Supp.2001) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."). Milk Train employed Plaintiffs in New York. Further, a Court in New York would have properly exercised personal jurisdiction over Milk Train had the cause of action been brought there.

The Court next considers "all the relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different [venue]." *Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.1989).

The following factors are relevant: (1) the availability and convenience of witnesses and parties; (2) the place of the alleged wrong; (3) the location of the books and records; (4) the possibility of delay or prejudice if transfer is granted; (5) the location of counsel; and (6) the plaintiff's choice of forum. *Hall*, 64 F.Supp.2d at 644.

### (1) Availability and Convenience of the Witnesses and Parties

Arguably, the convenience of the witnesses and parties is the most important factor in determining whether a case should be transferred pursuant to 28 U.S.C. § 1404(a). *See Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993). In this case, Milk Train identifies two witnesses it intends to call at trial, Collen Pank and Michael J. Pank, both of whom are the owners of Milk Train. Milk Train states that it would be burdensome for those potential witnesses to attend trial in the Western District of Texas. However, the Court notes that these two witnesses are the only witnesses located in New York. Moreover, Milk Train is the only party located in New York. All the other parties to this suit, Plaintiff Moreno, Plaintiff Ortega, and Defendant AG–Labor Services, are located in El Paso, Texas. Because the majority of the parties are in Texas, and because only two witnesses are located in New York, the Court is of the opinion that this factor weighs against transferring venue.

### (2) Place of the Alleged Wrong

In the instant case, the alleged wrong occurred both in Texas and in New York. Accordingly, the Court finds that this factor neither favors nor disfavors a transfer of venue.

### (3) Location of Books and Records

When considering a motion to transfer venue, the location of books and other records is usually given little weight, unless the documents "are so voluminous that their transport is a major undertaking." *Gardipee v. Petroleum Helicopters, Inc.*, 49 F.Supp.2d 925, 931 (E.D.Tex.1999) (quoting *Met–L–Wood Corp. v. SWS Indus., Inc.*, 594 F.Supp. 706, 710 (N.D.Ill. 1984)). Here, Milk Train has not indicated which documents it believes are relevant to this cause or whether those documents are so voluminous that transporting them would be impractical. Milk Train has simply not sustained its burden on this point, and the Court finds, therefore, that this factor weighs against transferring venue.

### (4) Possibility of Delay or Prejudice if Transfer is Granted

Here, Milk Train has given no indication of what effect transfer would have upon the disposition of this case. Nevertheless, the Court notes that this case is still in its inception and thus, transferring this matter will not likely delay the hearing of this cause on the merits. Therefore, the Court finds that the factor neither favors nor disfavors transfer of venue.

### (5) Location of Counsel

With respect to the location of counsel, Milk Train has provided no evidence bearing on this issue. The Court notes that both Plaintiffs' and Milk Train's counsel are located in the Western District of Texas, hence, travel to the Court could not possibly present a burden to either party. This factor most certainly weighs against transferring venue.

### (6) Plaintiffs' Choice of Forum

Finally, the Court considers Plaintiffs' choice of forum. In general, a plaintiff's choice of forum is given considerable weight and will not be disturbed unless the other factors weigh substantially in favor of transfer. *Robertson v. Kiamichi R.R.*

*Co.,* 42 F.Supp.2d 651, 656 (E.D.Tex.1999). Here, Plaintiffs have chosen to bring their claims in the Western District of Texas, and the Court finds that few other factors weigh substantially in favor of transferring the case elsewhere. Therefore, the Court finds that this factor weighs against transferring venue.

All told, of the six relevant factors considered by this Court, four factors weigh against transferring venue and two factors are neutral. Consequently, the Court finds that Milk Train has failed to meet its burden of demonstrating that the balance of convenience and justice substantially weigh in favor of transferring this cause to the Northern District of New York. Hence, after due consideration, the Court is of the opinion that Milk Train's "Motion to Transfer Venue" should be denied.

Accordingly, **IT IS HEREBY OR-DERED** that Milk Train, Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue, or in the Alternative Motion to Transfer Venue" is **DENIED** in all respects.